Nos. 43,836 and 44,018

EDWARD F. MURRAY, SR., and ESTHER M. MURRAY, his wife, *Appellants*, v. STATE BOARD OF REGENTS, of the State of Kansas, *Appellee*.

(401 P. 2d 898)

Opinion filed May 15, 1965.

*Robert K. Weary,* of Junction City, argued the cause, and *Ulysses S. Weary* and *E. S. Barnhill,* both of Junction City, were with him on the briefs for the appellants.

*Charles S. Arthur,* Special Assistant Attorney General, of Manhattan, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: These appeals stem from a controversy over a condemnation proceeding brought by the State Board of Regents to acquire a tract of land on behalf of the Kansas State University, Manhattan, Kansas, for engineering research.

Because of the rather complicated manner in which the appeals reached this court a chronological presentation of both the substantive and procedural facts will be helpful.

In the early spring of 1962, the Kansas State University was preparing to make application to the federal government for grants for the purpose of conducting radiation shielding and other nuclear

research programs. In order to qualify for the grants it was necessary that the university show control of a tract of land on which the nuclear research programs could be conducted.

On May 3, 1962, the Kansas State University Endowment Association entered into a lease agreement with Edward F. Murray and Esther, his wife. The lease covered one hundred seventy-five acres of land adjacent to the Fort Riley Military Reservation and was for a term of five years extending to April 30, 1967. The agreement also provided for an option to purchase which covered two hundred ninety acres of land, including the land under lease, for the sum of two hundred dollars per acre. The option to purchase extended to May 1, 1964.

The lease and option agreement provided:

"The parties hereto understand and agree that the above described real estate will be occupied for the purpose of conducting a 'Summer Shielding Development Program' by the Shielding Institute which is sponsored by the Department of Nuclear Engineering at Kansas State University, Manhattan, Kansas."

The university subsequently received a grant from the federal government. It entered into possession of the leased land under a sub-lease from the Endowment Association and erected structures for the operation of certain phases of the radiation shielding program.

On June 5, 1963, the State Board of Regents filed a petition in the District Court of Riley County for the condemnation of the land covered by the lease. The petition stated in part:

"That the State Board of Regents is a body created and existing by virtue of the laws of the State of Kansas and said Board is vested with the management, control and government of the Kansas State University of Agriculture and Applied Science at Manhattan, Kansas.

"That the said State Board of Regents desires to acquire in the name of the State of Kansas a certain tract and parcel of land situated in Riley County, Kansas, for engineering research for the Kansas State University of Agriculture and Applied Science, Manhattan, Kansas, consisting of 175 acres more or less. That said tract and parcel of land is described and shown of record to be owned as follows:" (Description omitted.)

The petition was approved by the court and appraisers were appointed. On September 11, 1963, the landowners filed a motion to dismiss the condemnation proceedings stating:

"In support of their motion the defendant and land owners state and allege that the condemnor, Kansas State University of Agriculture and Applied Science, Manhattan, Kansas, requested the Kansas State University Endowment

Association, a corporation, to obtain a lease and option agreement for the benefit of said Kansas State University whereunder the University could occupy certain land in connection with its Summer Shielding Development Program, and said land could be acquired by the Endowment Association for the benefit of the University for the purpose of making available said real estate for establishment of the proposed laboratory sponsored by the State Office of Civil Defense; that pursuant to said lease agreement, said Kansas State University entered into possession and occupied the premises and is still in possession and occupying said premises for the purpose of its Summer Shielding Development Program; that the land covered by said lease and option agreement is the same land the University is seeking to acquire hereunder; that said University has accepted all of the benefits accruing to it under and by virtue of said lease and option agreement and now seeks to avoid its obligations under said lease and option agreement by virtue of this condemnation action; that said University is not entitled to accept the benefits of said lease and option agreement and avoid the obligations thereof; that, in addition, as a result of the above facts and circumstances, the University is estopped to condemn said land; and that therefore this action should be dismissed."

On September 18, 1963, the appraisers filed their report in which they appraised the value of the land taken, utilities and buildings, and severance damages at a total of $23,000. On September 30, 1963, the district court entered an order approving the appraisers' report and denying the landowners' motion to dismiss.

The landowners' motion for reconsideration of the motion to dismiss was also overruled on October 7, 1963, and they appealed to this court on October 11, 1963. This appeal was number 43,836.

On October 12, 1963, the landowners filed a petition for injunction seeking to have the State Board of Regents enjoined from "entering said premises, or attempting to appropriate, condemn or acquire said land in any manner inconsistent with the provisions of said option agreement. . . ." The petition stated the same grounds for relief as were stated in its motion to dismiss, which have heretofore been presented.

The State Board of Regents filed a demurrer and a motion to dismiss. The district court, with the consent of counsel for both parties, then stayed all proceedings in both cases pending a decision of this court in the appeal, numbered 43,836, from the order overruling the motion to dismiss the condemnation proceedings.

Later the landowners filed a motion for a restraining order and temporary injunction stating that the defendant was making claims to the title of the property contrary to the trial court's stay order. On June 5, 1964, the district court overruled the motion finding it to be without merit as a matter of law and stating:

"The Court further finds that there is a substantial ground for difference of opinion concerning the controlling question of law as to whether or not the doctrine of equitable estoppel, as a matter of law, applies to the State Board of Regents of the State of Kansas or any similar body in the exercise of its rights of eminent domain or condemnation. As the identical questions of fact and law are involved in this case as are in the condemnation proceeding, case number 13,613 of this Court, which is presently on appeal to the Supreme Court of the State of Kansas the same having the docket number 43,836, an immediate appeal of this matter should be consolidated with the above described pending appeal if the Supreme Court should see fit to so consolidate as such an immediate appeal will materially advance the ultimate termination of the litigation of this case and will resolve the controlling question of law for this matter.   .   .   ."

The plaintiffs, the landowners, have duly perfected their appeal to this court in the injunction proceedings which has been numbered 44,018.

Counsel for the parties agree that the facts and issues are the same and that determination of the issues raised in the appeal in the injunction case will also dispose of the issues presented in the appeal from the order refusing to dismiss the condemnation proceeding.

The controlling question to be determined is whether the appellee, the State Board of Regents, is estopped from condemning the land because of the lease and escrow agreement heretofore discussed.

The appellants contend that the Kansas State University Endowment Association was acting as agent for the State Board of Regents in making the lease and option agreement, and that the acquisition of appellants' land by condemnation is contrary to the provisions of the lease and option agreement entered into by its agent for its benefit. It follows that the basic foundation of the landowners' claim is agency, and if there is no agency there can be no claim of estoppel. Appellants do not dispute this basic conclusion.

We are forced to conclude that the Endowment Association was not, and could not have been, acting as agent for the State Board of Regents when it entered into the opinion agreement with the appellants.

The State Board of Regents had no authority to acquire land except by condemnation under the provisions of G. S. 1949 (now K. S. A.), 76-147 and the then existing condemnation statutes. The Board has only such authority as is granted to it by the legislature. Governmental agencies are creatures of the legislature, and can

exercise only such powers as are expressly conferred by law and those necessary to make effective the powers expressly conferred. (*State, ex rel., v. City of Kansas 'City,* 181 Kan. 870, 317 P. 2d 806; *State, ex rel., v. City of Overland Park,* 192 Kan. 654, 391 P. 2d 128). In *State, ex rel., v. Regents of the University,* 55 Kan. 389, 40 Pac. 656, this court in denying the Board of Regents the right to collect fees from students for use of the library because not authorized by the legislature held:

"An action in the nature of *quo warranto* may be maintained in the name of the state by the attorney general to oust the board of regents of the university of Kansas from the exercise of corporate powers in excess of those conferred on it by law. The board of regents is such a corporation as is subject to the control of this court in such an action." (Syl. 1.)

At a very early date this court stated in *Kansas State Agricultural College v. Hamilton,* 28 Kan. 376, p. 378:

"The Kansas State Agricultural College is a state institution; it is absolutely and exclusively under the control of the state; its properties belong to the state. It is true that today the state has created the board of regents into a body corporate, but tommorow it may set aside this body corporate, and place the control of the properties in any other board or organization. No private rights intervene. It is purely and solely a matter of state and public control."

In ·*Hornaday v. State,* 63 Kan. 499, 65 Pac. 656, we held that boards, such as the State Board of Regents, could acquire land only in the manner provided by the legislature. The opinion in the above case quoted with approval from *Hornaday v. State,* 62 Kan. 822, 62 Pac. 329, where it is stated at page 830 of the opinion:

". . . The rule is that, in the case of those acting on behalf of the public, there is no power to agree as to the compensation to be given to the landowner where his property is sought to be taken for public use, unless it is given by statute, either expressly or by implication. (Lewis, Em. Dom. § 288.)"

The legislature has not seen fit to authorize the State Board of Regents to acquire land by negotiation and purchase, neither has the legislature seen fit to authorize the Board to negotiate options to purchase, and it had no authority to do so. No doubt the Endowment Association entered into the lease and option agreement for the purpose of assisting the Kansas State University in obtaining government grants for the purpose of conducting nuclear research programs, but its assistance could not go beyond the power of the University and the State Board of Regents to act. The Endowment Association could not by agreement, or under the claim of agency,

extend the power of the State Board of Regents beyond that granted by the legislature.

It necessarily results that the Endowment Association could not have legally acted as agent for the State Board of Regents in purchasing the land or in acquiring an option which it could neither legally ratify nor exercise. If the State Board of Regents is to acquire title to the land, it can be done only by condemnation.

Since no agency relationship could have existed between the Endowment Association and the State Board of Regents in the execution of the option agreement, there is no basis for applying the doctrine of equitable estoppel against the State Board of Regents in the proceedings to condemn the land in controversy.

It would appear that the lease and option agreement anticipated condemnation proceedings by the state or its agencies. The agreement specifically provided for the disposition of the proceeds under the following conditions:

"In the event condemnation proceedings are undertaken by any agency, state, Federal or municipal, having the power of eminent domain, with the result that the aforementioned premises are subject thereto, then, and in that event, the lessor shall be entitled to any award resulting from such condemnation proceedings, . . ."

What has been said renders unnecessary a determination of whether the doctrine of equitable estoppel applies to the State Board of Regents. It is also unnecessary to consider the right of appellants to appeal from the order overruling the motion to dismiss the petition for condemnation, since the issue involved in that appeal has been determined in the appeal from the order denying the temporary injunction.

The judgments of the district court are affirmed with instructions to dismiss the petition for injunction involved in appeal numbered 44,018, and to proceed, as provided by law, with the condemnation proceedings involved in appeal numbered 43,836.

APPROVED BY THE COURT.