**In re Mark INNES, Genevieve Innes, Debtors.**

**Mark INNES, Genevieve Innes, Plaintiffs,**

v.

**KANSAS STATE UNIVERSITY, et al., Defendants.**

**Bankruptcy No. 95–41486–13.**
**Adv. No. 95–7104.**

United States Bankruptcy Court, D. Kansas.

April 8, 1997.

Brenda Bell, Seaton Miller & Bell, L.L.P., Manhattan, KS, for debtors.

Christopher F. Burger, Asst. Atty. Gen, Topeka, KS, for Kansas State University.

William H. Griffin, Chapter 13 Trustee, Topeka, KS.

John Foulston, U.S. Trustee, Wichita, KS.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Chief Judge.

This proceeding is before the Court on defendant Kansas State University's motion to dismiss for lack of jurisdiction. The Court has heard the arguments of counsel and considered the relevant pleadings, and is now ready to rule.

### FACTS

The debtors filed a complaint to determine the dischargeability of a number of student loans. They claim the loans should be dischargeable on the ground of "undue hardship," as provided by 11 U.S.C.A. § 523(a)(8)(B) and § 1328. Except for the amounts owed on the loans, the facts relevant to the undue hardship issue will be the same regardless of the number of loans involved. But for a preliminary jurisdiction question raised by KSU, the case could be ready for trial on the undue hardship issue. KSU contends that it is immune from suit in federal court pursuant to the Eleventh Amendment to the Constitution of the United States because it is an arm of the State of Kansas. The debtors dispute KSU's right to claim that immunity, and alternatively, contend KSU has waived any immunity for which it might qualify.

The controlling facts are not disputed. KSU entered into a written agreement (Agreement) with the United States Department of Education (DOE) which enabled KSU to participate in student financial assistance programs authorized by title IV of the Higher Education Act of 1965, as amended. The Agreement provides that participation subjects KSU to the terms and conditions set forth in the Agreement. Between 1987 and 1991, one of the debtors obtained several loans from KSU under the Federal Perkins Loan Program, one of several loan programs covered by the Agreement. Perkins Loans are authorized and governed by 20 U.S.C.A. § 1087aa, et seq., and 34 C.F.R. Part 674.

In general, the Perkins Loan Program provides federal funds to be administered through institutions which have made agreements with the DOE. A fund for the loans is established with a federal capital contribu-tion; the institution must add to the fund its own contribution equal to at least one-ninth of the federal contribution. *20 U.S.C.A. § 1087cc(a)(2)(B).* Collections on loans made under the program are also deposited into the fund. *Id.* The money in the fund is then available to provide loans to qualified students at the institution. KSU's Agreement states:

> The institution understands and agrees that it is subject to the program statutes and implementing regulations for each [program established under Title IV of the Higher Education Act of 1965(HEA)] in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA and the Student Assistance General Provisions regulations set forth in 34 CFR Part 668. The institution also agrees to comply with all the relevant program statutes and regulations governing the operation of each Title IV, HEA Program in which it participates.

In a section dealing specifically with the Perkins Loan Program, the Agreement states: "The institution agrees to perform the functions and activities set forth in 34 CFR Part 674"; and "The institution agrees to exercise due diligence in the collection of loans made from the Fund in accordance with program regulations." At the conclusion of the life of the program, the federal capital contribution must be returned to the United States. *§ 1087ff.* During the life of the program, certain administrative expenses and certain losses incurred by the institution are indemnified by the United States. *§ 1087cc(b).*

### DISCUSSION AND CONCLUSIONS

Except where a State has consented or Congress has constitutionally declared otherwise, the Eleventh Amendment to the United States Constitution prevents a private individual from suing the State in federal court. *Seminole Tribe of Florida v. Florida,* 517 U.S. ——, —— ——, —— ——, 116 S.Ct. 1114, 1122–23, 1124–26, 134 L.Ed.2d 252, 265, 268–69 (1996). Under the "arm-of-the-state" doctrine, this immunity also extends to an entity created by a State that operates as an alter ego or instrumentality of the State. *Watson v. University of Utah Medical Cen-*

*ter*, 75 F.3d 569, 574 (10th Cir.1996). The Kansas Board of Regents controls KSU and the other Regents schools. Generally speaking, these schools have been determined to function as arms of the State of Kansas. *Brennan v. University of Kansas*, 451 F.2d 1287, 1290 (10th Cir.1971) *(relying on Board of Regents v. Hamilton*, 28 Kan. 376, 378–80 (1882) *and Murray v. State Board of Regents*, 194 Kan. 686, 401 P.2d 898 (1965)). Consequently, they would ordinarily share the State's immunity from suit in federal court unless they have somehow waived that immunity and consented to such suits.

■ There can be little doubt that Congress intended to abrogate the States' Eleventh Amendment immunity when it revised 11 U.S.C.A. § 106 in 1994. Last year's *Seminole Tribe* decision strongly suggests the Bankruptcy Clause in Article I of the Constitution does not give Congress the power to abrogate that immunity. The question remains, however, whether the Fourteenth Amendment might have given Congress the necessary authority. No controlling case law has resolved that question for this Court, and the Court concludes it need not offer an answer in this case. Instead, the Court finds that KSU has waived any Eleventh Amendment immunity it otherwise might have by entering into the Agreement with the DOE.

■ KSU relies on several U.S. Supreme Court cases discussing what it takes for a State to waive its Eleventh Amendment immunity from suit in federal court, These cases clearly declare that neither participation in a federal program, receipt of federal funds, nor an agreement simply to recognize and abide by federal laws, regulations, and guidelines is sufficient to waive that immunity. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 246–47, 105 S.Ct. 3142, 3149–50, 87 L.Ed.2d 171 (1985); *Florida Dept. of Health & Rehabilitative Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1033–35, 67 L.Ed.2d 132 (1981) *(per curiam)*; *Edelman v. Jordan*, 415 U.S. 651, 673–74, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974). KSU contends nothing more is involved here.

The Court is convinced much more is involved. Since at least 1977, K.S.A. 76–723 has provided:

The board of regents, or any state educational institution with the approval of the board of regents, may make and file applications for federal funds appropriated and made available by federal law for purposes related to the operation or function of such board or institution. The board of regents, or any state educational institution with the approval of the board of regents, may receive from the federal government, or any of its agencies, any funds made available under existing law, rules or regulations, or that may hereafter be made available. The board of regents, or any state educational institution with the approval of the board of regents, may expend the same in accordance with the law, and the rules, regulations and requirements under which such funds are made available. Such moneys shall be expended only in accordance with and for the purposes specified in federal law. Federal funds shall be deposited in the state treasury.

In this statute, the Kansas legislature authorized KSU to agree to abide by whatever federal law and regulations might govern qualifying educational programs like the Federal Perkins Loan Program. KSU's Agreement does not simply provide that it will abide by federal law and regulations, but specifically identifies various regulations, including 34 C.F.R. § 674.49, "Bankruptcy of borrower," that the school will follow.

In pertinent part, section 674.49 provides:

(b) Proof of claim. The institution shall file a proof of claim in the bankruptcy proceeding, unless, in the case of a proceeding under Chapter 7 of the Bankruptcy Code, the notice of meeting of creditors states that the borrower has no assets.

(c) Borrower's request for determination of dischargeability.

(1) The institution shall follow the procedures in this paragraph if it is properly served with a complaint in a proceeding under chapter 7, 11, 12 or 13 of the Bankruptcy Code, or under 11 U.S.C. 1328(b), for a determination of dischargeability under 11 U.S.C.

523(a)(8)(B) on the ground that repayment of the loan would impose an undue hardship on the borrower and his or her dependents.

(2) If more than seven years of the repayment period on the loan, excluding periods of deferment granted to the borrower, has passed before the borrower filed the petition for relief in bankruptcy, the institution may not oppose a determination of dischargeability requested under 11 U.S.C. 523(a)(8)(B) on the ground of undue hardship.

(3) If less than seven years of the repayment period on the loan, excluding periods of deferment granted to the borrower, has passed before the borrower filed the petition for relief, the institution shall determine, on the basis of reasonably available information, whether repayment of the loan under either the current repayment schedule· or any adjusted schedule authorized under subpart B or D of this part would impose an undue hardship on the borrower and his or her dependents.

(4) If the institution concludes that repayment would not impose an undue hardship, the institution shall determine whether the costs reasonably expected to be incurred to oppose discharge will exceed one-third of the total amount owed on the loan, including principal, interest, late charges and collection costs.

(5) If the expected costs of opposing discharge of such a loan do not exceed one-third of the total amount owed on the loan, the institution shall—

(i) Oppose the· borrower's request for a determination of dischargeability; and

(ii) If the borrower is in default on the loan, seek a judgment for the amount owed on the loan.

(d) Request for determination of nondischargeability. The institution may file a complaint for a determination that a loan obligation is not dischargeable and for judgment on the loan if the institution would have been required under paragraph (c) of this section to oppose a request for a determination of dischargeability with regard to that loan.

(e) Chapter 13 repayment plan.

(1) The institution shall follow the procedures in this paragraph in response to a repayment plan proposed by a borrower who has filed for relief under Chapter 13 of the Bankruptcy Code.

(2) The institution is not required to respond to a proposed repayment plan, if—

(i) The borrower proposes under the repayment plan to repay all principal, interest, late charges and collection costs on the loan; or

(i) The repayment plan makes no provision with regard either to the loan obligation or to general unsecured claims.

(3) (i) If the borrower proposes under the repayment plan to repay less than the total amount owed on the loan, the institution shall determine from its own records and court documents—

(A) The amount of the loan obligation dischargeable under the plan by deducting the total payments on the loan proposed under the plan from the total amount owed;

(B) Whether the plan or the classification of the loan obligation under the proposed plan meets the requirements of section 1325 of the Code; and

(C) Whether grounds exist under 11 U.S.C. 1307 to move for conversion or dismissal of the Chapter 13 case.

(ii) If the institution reasonably expects that costs of the appropriate actions will not exceed one-third of the dischargeable loan debt, the institution shall—

(A) Object to confirmation of a proposed plan that does not meet the requirements of 11 U.S.C. 1325; and

(B) Move to dismiss or convert a case where grounds can be established under 11 U.S.C. 1307.

(4) (i) The institution shall monitor the borrower's compliance with the requirements of the plan confirmed by the court. If the institution determines that

the debtor has not made the payments required under the plan, or has filed a request for a "hardship discharge" under 11 U.S.C. 1328(b), and the institution holds a loan that entered repayment status more than seven years, excluding periods of deferment, before the borrower filed the petition for relief in bankruptcy, the institution shall determine from its own records and information derived from documents filed with the court—

(A) Whether grounds exist under 11 U.S.C. 1307 to convert or dismiss the case; and

(B) Whether the borrower has demonstrated entitlement to the "hardship discharge" by meeting the requirements of 11 U.S.C. 1328(b).

(ii) If the institution reasonably expects that costs of the appropriate actions, when added to the costs already incurred in taking actions authorized under this section, will not exceed one-third of the dischargeable loan debt, the institution shall—

(A) Move to dismiss or convert a case where grounds can be established under 11 U.S.C. 1307; or

(B) Oppose the requested discharge where the debtor has not demonstrated that the requirements of 11 U.S.C. 1328(b) are met.

*34 C.F.R. § 674.49 (1996).*[1] This regulation requires KSU to perform various tasks that can take place only in the bankruptcy court where KSU's borrower has filed for bankruptcy. These tasks include filing a proof of claim in an appropriate case, opposing a chapter 13 repayment plan under certain circumstances, seeking conversion or dismissal of a chapter 13 case under certain circumstances, and opposing a requested discharge under 11 U.S.C.A. § 1328(b). The regulation also requires KSU, if the circumstances warrant, to oppose a borrower's request for a determination of dischargeability under § 523(a)(8)(B), a request that can be made before either a bankruptcy court or a state court, but is ordinarily made before the bankruptcy court. By agreeing to this regulation, KSU necessarily consented to suit in a federal bankruptcy court concerning any of these matters. This was not a general agreement to follow federal law and regulations, but a specific agreement, authorized by the Kansas legislature, to participate in proceedings before a federal bankruptcy court. The Court concludes KSU's motion to dismiss should be overruled.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.

### JUDGMENT ON DECISION

This proceeding was before the Court on defendant Kansas State University's motion to dismiss for lack of jurisdiction. Kansas State University (KSU) was represented by Christopher F. Burger, Assistant Attorney General for the State of Kansas. The debtors were represented by Brenda J. Bell of Seaton, Miller & Bell, L.L.P., of Manhattan, Kansas. The Court heard the arguments of counsel and considered the relevant pleadings, and has now issued its Memorandum of Decision resolving the dispute.

For the reasons stated in that Memorandum, KSU's motion is hereby denied.

IT IS SO ORDERED.

1. In all respects relevant to this case, this regulation has remained the same since at least November 30, 1987. *See 52 Fed.Reg. 45552, 4560–61 (1987) (adopting revised § 674.49).*