**F I L E D**
United States Court of Appeals
Tenth Circuit

AUG 24 1999

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re:  MARK INNES and
GENEVIEVE INNES,

     Debtors.

---

MARK INNES and GENEVIEVE
INNES,

     Plaintiffs - Appellees,

v.

KANSAS STATE UNIVERSITY,
State of Kansas Higher Education
Assistance Foundation,

     Defendant - Appellant.

No. 97-3363

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 97-4075-DES)**

---

Christopher F. Burger, Assistant Attorney General (Carla J. Stovall, Attorney
General for the State of Kansas, with him on the briefs), Topeka, Kansas, for
Defendant-Appellant.

Brenda J. Bell of Seaton, Miller and Bell, L.L.P., Manhattan, Kansas, for
Plaintiff-Appellee.

---

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**McKAY**, Circuit Judge.

_____

**I.**

This case arises from an adversary proceeding instituted in the United States Bankruptcy Court against Kansas State University [KSU] in which the debtors, Mark and Genevieve Innes, sought to have their student loans discharged on the basis of undue hardship pursuant to 11 U.S.C. §§ 523(a)(8) and 1328. KSU answered the debtors' complaint, admitting that Mark Innes was indebted to KSU for $5,000 plus an amortized amount for each month since the debt became due in 1995. KSU further stated that the monthly amount due would "not impose an undue hardship on the debtors," and requested the court to deny the debtors' complaint and grant KSU's "costs and attorney's fees in defending this action." Appellant's App. at 15.

Subsequently, KSU filed a motion to dismiss the bankruptcy proceeding, claiming that it was immune from suit in federal court under the Eleventh Amendment. The bankruptcy court denied the motion. It held that KSU's agreement with the United States Department of Education to participate in the federal Perkins Loan Program requiring KSU to defend dischargeability claims in the bankruptcy court, coupled with Kansas legislation, acted as a waiver of the

State's Eleventh Amendment immunity. See Innes v. Kansas State Univ. (In re Innes), 207 B.R. 953, 957 (Bankr. D. Kan. 1997). KSU appealed that decision to the district court, see 28 U.S.C. § 158(c)(1)(A), which affirmed the bankruptcy court. See Appellant's App. at 96. KSU now appeals to this court. We have jurisdiction to hear this interlocutory appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993) (applying Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)).

On appeal, KSU reasserts the arguments it made to the bankruptcy and district courts, contending that neither Kan. Stat. Ann. § 76-723 nor KSU's contract with the DOE evidences any intent to waive Eleventh Amendment immunity. KSU further argues that a state may waive its immunity only by express statements or overwhelming implication in a state statute or constitution, and that, therefore, it is impermissible to read the Kansas legislation, the contract, and the federal regulation in concert in order to find a waiver. The debtors respond that the terms of the Kansas legislation, the contract, and the federal regulation leave no room for any reasonable construction other than that KSU waived its immunity. We review de novo a district court's denial of a state's claim of Eleventh Amendment immunity from suit in federal court. See Powder River Basin Resource Council v. Babbitt, 54 F.3d 1477, 1483 (10th Cir. 1995).

## II.

The critical issue we must decide is whether KSU waived its Eleventh Amendment immunity in this adversary bankruptcy proceeding by entering into a contract with the DOE which requires KSU to perform certain actions in the event of the bankruptcy of the borrower. To answer this question, we must consider (1) the methods by which a state may waive Eleventh Amendment immunity, (2) whether KSU did in fact waive immunity, and (3) whether the waiver was valid.

## A.

The Eleventh Amendment to the United States Constitution restricts federal jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has long interpreted the Eleventh Amendment to apply to federal suits brought by all persons against unconsenting states. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996) (citing Hans v. Louisiana, 134 U.S. 1, 13-15 (1890)). Because KSU is an "arm of the state," it is entitled to assert Eleventh Amendment immunity. See Watson v. University of Utah Med. Ctr., 75 F.3d 569, 574-75 (10th Cir. 1996); Brennan v. University of Kan., 451 F.2d 1287, 1290 (10th Cir. 1971). Eleventh

Amendment immunity is not a defense where a state has waived it and consents to suit in federal court or where Congress has abrogated it by unequivocally expressing an intent to do so and acting pursuant to a valid exercise of power. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238-40 (1985); see also Seminole Tribe, 517 U.S. at 55 (clarifying two-part test required to lawfully abrogate Eleventh Amendment immunity). Because the debtors concede that abrogation is not at issue in this case, we only address whether KSU waived its Eleventh Amendment immunity.[1]

In Atascadero, the Court explained that "[a] State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program." Atascadero, 473 U.S. at 238 n.1. The Court further stated that both

_____

[1]Because neither the bankruptcy court nor the district court relied on § 106(a) of the Bankruptcy Code, we do not address in this case whether it is constitutional. See, e.g., Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown), 133 F.3d 237, 243-45 (3d Cir. 1998) (holding 11 U.S.C. § 106(a) unconstitutional to the extent that it purports to abrogate Eleventh Amendment immunity); Department of Transp. & Dev. v. PNL Asset Management Co. (In re Estate of Fernandez), 123 F.3d 241, 244-46 (5th Cir.) (holding attempted statutory waiver of sovereign immunity under § 106(a) unconstitutional and listing similar cases), amended by 130 F.3d 1138 (5th Cir. 1997); cf. Schlossberg v. Maryland (In re Creative Goldsmiths of Wash., D.C., Inc.), 119 F.3d 1140, 1147 (4th Cir. 1997) (holding that § 106(a) & (b) offend the Eleventh Amendment), cert. denied, __ U.S. __,118 S. Ct. 1517 (1998). But cf. Wyoming Dep't of Transp. v. Straight (In re Straight), 143 F.3d 1387, 1392 (10th Cir. 1998) (holding that 11 U.S.C. § 106(b) is unaffected by Seminole Tribe), cert. denied, __ U.S. __ , 119 S. Ct. 446 (1998).

means of waiving immunity "require an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment," id.; see id. at 241, and described "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction [as] a stringent one." Id. at 241. A waiver of Eleventh Amendment immunity will be found "only where stated 'by the most expressive language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" Edelman v. Jordan, 415 U.S. 651, 673 (1974) (citation omitted); cf. College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., __ U.S. __ , 119 S. Ct. 2219, 1999 WL 412639, at *8-*9 & n.2 (1999) (overturning the constructive or implied waiver principle set out in Parden v. Terminal Ry. of Ala. Docks Dep't, 377 U.S. 184 (1964)).

## 1.

We begin by ascertaining whether a Kansas statute or constitutional provision governing this case has expressly waived Eleventh Amendment immunity. See Atascadero, 473 U.S. at 238 n.1. Though Kansas has generally authorized suits brought in state court against state educational institutions, see Kan. Stat. Ann. § 76-713, its statutes have not expressly waived Eleventh Amendment immunity. See Brennan, 451 F.2d at 1290; see also Atascadero, 473

U.S. at 241 ("Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment . . . [absent] intent[] to subject itself to suit in *federal court*." (citations omitted)); Johns v. Stewart, 57 F.3d 1544 (10th Cir. 1995) (holding that Utah did not waive its Eleventh Amendment immunity with respect to a suit brought in federal court because state statute provided for exclusive original jurisdiction in its own courts). Nor is there any waiver provision in the Kansas Constitution. Accordingly, KSU has not waived its immunity by this method.

**2.**

Our analysis, however, does not end here. In addition to examining the state's statutes and constitution, Atascadero instructs us to determine whether the state "otherwise waiv[ed] its immunity to suit in the context of a particular federal program." Atascadero, 473 U.S. at 238 n.1. Like the first type of waiver, this method requires an unequivocal indication that the state intends to consent to be sued in federal court. See id. at 238 n.1 & 241; College Sav. Bank, 1999 WL 412639, at *9-*10 (rejecting Parden's doctrine of constructive consent because it conflicts with the longstanding requirement that a waiver of a constitutional right must be unequivocally expressed and "altogether voluntary" (quotation marks and

citation omitted)). Although this second method of waiver seems to allow looking beyond the text of a state statute or constitution to a state's conduct in relation to a federal program in order to find a waiver, KSU contends that Edelman and this court's decision in Johns restrict our analysis to examining only statutory and constitutional text to find a waiver. See Johns, 57 F.3d 1553 (reading Edelman as requiring that a state may waive only expressly in a state statute or constitution or by overwhelming implication from the text of that state statute or constitution). Thus, KSU argues that in this case a waiver may only be found if the text of Kan. Stat. Ann. § 76-723 overwhelmingly implies no other reasonable construction. On the other hand, the debtors urge us to follow the approach taken by the bankruptcy and district courts–reading the legislation in concert with the contract and the federal regulation to determine whether they expressly state or overwhelmingly imply that KSU waived Eleventh Amendment immunity. To resolve this dispute, we must evaluate whether a state may waive immunity by its affirmative conduct in the context of a federal program or whether Edelman mandates that a state can waive only by express statements or overwhelming implication in its statutory or constitutional text. See Atascadero, 473 U.S. at 238 n.1 & 239-40; Edelman, 415 U.S. at 673.

Several Supreme Court decisions provide that neither receipt of federal funds, participation in a federal program, nor an agreement to recognize and abide

-8-

by federal laws, regulations, and guidelines is alone sufficient to waive Eleventh Amendment immunity. See Atascadero, 473 U.S. at 246-47 (holding that participation in federal programs and receipt of federal funds under such programs "fall[] far short of manifesting a clear intent . . . to waive immunity"); Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150 (1981) (stating that state agency's explicit agreement "to obey federal law in administering federal program can hardly be deemed an express waiver of Eleventh Amendment immunity"); Edelman, 415 U.S. at 673-74 (holding that neither mere participation in a federal program nor provision requiring compliance with federal law is sufficient to establish that the state consented to be sued in federal court); accord Duke v. Department of Agric., 131 F.3d 1407, 1408 (10th Cir. 1997) (holding that New Mexico did not waive Eleventh Amendment immunity "by engaging in activities and entering contracts subject to federal regulation"). In spite of these holdings, however, this court and several others, including the Supreme Court, have concluded that, "in the absence of explicit consent by state statute or constitutional provision, a state may consent to a federal court's jurisdiction through its affirmative conduct." Georgia Dep't of Revenue v. Burke (In re Burke), 146 F.3d 1313, 1318 (11th Cir. 1998) (holding that state waived its Eleventh Amendment immunity by filing proofs of claim in bankruptcy proceedings), cert. denied, __ U.S. __ , __ S. Ct. __ , 1999 WL

422421 (1999); see Gardner v. New Jersey, 329 U.S. 565, 574 (1947) ("When the State becomes the actor and files a claim against the [bankruptcy] fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim."); Straight, 143 F.3d at 1389-90 (holding that state waived its immunity by filing proofs of claim); Dekalb County Div. of Family & Children Servs. v. Platter (In re Platter), 140 F.3d 676, 680 (7th Cir. 1998) (concluding that state's claim of Eleventh Amendment immunity did not bar action in bankruptcy court to determine discharge of debt because state had initiated adversarial action against debtor); Rose v. United States Dep't of Educ. (In re Rose), 215 B.R. 755, 762 (Bankr. W.D. Mo. 1997) (deciding that state waived immunity by filing proofs of claim); cf. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (holding that Utah waived Eleventh Amendment immunity by causing removal to federal court and litigating merits of 42 U.S.C. § 1983 action).

None of these cases rely on the text of a state statute or constitution to determine that the state waived immunity. In fact, we observed in Straight that Gardner and Platter do not "rel[y] upon any specific basis for decision other than the state's having acceded to the jurisdiction of the bankruptcy court by seeking its relief against the debtor." Straight, 143 F.3d at 1390. Cf. Ford Motor Co. v. Department of Treasury of Ind., 323 U.S. 459, 467 (1945) (noting that appearance in suit by state attorney general would waive state's immunity if attorney general

-10-

had authority under state law to waive immunity but holding that Indiana state law did not confer such authority); Schlossberg v. Maryland (In re Creative Goldsmiths of Wash., D.C., Inc.), 119 F.3d 1140, 1148-49 (4th Cir. 1997) (confirming that state generally waives Eleventh Amendment immunity to the extent that its "assertions in a state-instituted federal action, including those made with regard to a . . . proof of claim, amount to a *compulsory* counterclaim" but holding that Maryland law did not authorize waiver). In light of these cases, which firmly establish that a state agent acting with proper authorization can effectuate a waiver by filing a proof of claim or initiating an adversarial action in federal court, it necessarily follows that a waiver may be found not only in the text of a state statute or constitution but also by examining the underlying facts and circumstances of the case. As a result, we do not think it is so novel to suggest that the entire record and all the facts in this case should be examined to determine whether a waiver exists.

Further, we do not think that either Edelman or the language in Johns relied on by KSU was intended to prevent courts from considering the underlying facts in the record to determine whether they overwhelmingly imply a waiver. Nor does anything in College Savings Bank foreclose us from examining the underlying facts. Although the Supreme Court overturned Parden's constructive consent principle, see College Sav. Bank, 1999 WL 412639, at *8-*9 & n.2, this

-11-

case does not rely on constructive consent because it involves "a State's expressing unequivocally that it waives its immunity." See id. at *9. Indeed, College Savings Bank reaffirms the proposition that a waiver may be found in a state's acceptance of federal funds with conditions attached. See id. at *8 n.2 (confirming that Atascadero remains good law and explaining that "conditions attached to a State's receipt of federal funds are simply not analogous to Parden-style conditions attached to a State's decision to engage in otherwise lawful commercial activity"). The uncontroverted, historical facts of this case, in which a state agency with delegated authority explicitly consents to participate in a federal program and to follow the conditions thereof, including participation in certain federal bankruptcy court functions, is closely analogous to the waiver found in a state's acceptance of conditioned federal funds and differs greatly from mere participation in "otherwise commercial lawful activity." Id.; see also id. at *12 (citing South Dakota v. Dole, 483 U.S. 203 (1987), and noting that "Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that *acceptance of the funds entails an agreement to the actions*" (emphasis added)). Accordingly, we hold that it is permissible to assess the conduct of the party claiming immunity within the context of the federal program, including the specific contract and the governing federal regulation, to determine

whether the state entity expressed an unequivocal intent to waive.

**B.**

We now examine the Kansas legislation, the contract which KSU entered with the DOE, and the corresponding federal regulation to determine whether they reflect an unequivocal intent to waive Eleventh Amendment immunity. Section 76-723 of the Kansas Statutes Annotated allows state educational institutions to contract with the United States Department of Education to apply for and receive federal funds and to make the funds available under existing law, rules, or regulations for student financial assistance programs.[2] Known as a "participation agreement," the contract with the DOE controls KSU's participation in several

---

[2]Kan. Stat. Ann. § 76-723 provides in full:

The board of regents, or any state educational institution with the approval of the board of regents, may make and file applications for federal funds appropriated and made available by federal law for purposes related to the operation or function of such board or institution. The board of regents, or any state educational institution with the approval of the board of regents, may receive from the federal government, or any of its agencies, any funds made available under existing law, rules or regulations, or that may hereafter be made available. The board of regents, or any state educational institution with the approval of the board of regents, may expend the same in accordance with the law, and the rules, regulations, and requirements under which such funds are made available. Such moneys shall be expended only in accordance with and for the purposes specified in federal law. Federal funds shall be deposited in the state treasury.

-13-

student loan programs, including the Perkins Loan Program, which governs the loans subject to discharge in the underlying case. While the agreement indicates that KSU must comply generally with the terms and conditions of the agreement and with applicable federal law and regulations,[3] it also *explicitly* provides that KSU "agrees to perform the functions and activities set forth in 34 CFR [§] 674." In re Innes, 207 B.R. at 954. At the same time, § 674 requires the educational institution to exercise due diligence by complying with its specific provisions, including those described in § 674.49 concerning the bankruptcy of the borrower. See 34 C.F.R. Ch. VI, Subpart C; id. § 674.41.

Section 674.49 sets out the various responsibilities and duties that an educational institution must undertake and perform in the event of the bankruptcy of the borrower. First, the regulation states that, upon receiving notice of a

---

[3]The general provisions of the contract state:

> The institution understands and agrees that it is subject to the program statutes and implementing regulations for each [program established under Title IV of the Higher Education Act of 1965 (HEA)] in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA and the Student Assistance General Provisions regulations set forth in 34 C.F.R. [§] 668. The institution also agrees to comply with all the relevant program statutes and regulations governing the operation of each Title IV, HEA program in which it participates.

In re Innes, 207 B.R. at 954.

petition filed in bankruptcy by the borrower, the institution "shall immediately suspend any collection efforts outside the bankruptcy proceeding against the borrower." Id. § 674.49(a). In this provision, the institution subjects itself to the mandatory stay provisions of federal bankruptcy law. Second, unless the borrower has no assets, the institution "shall file a proof of claim in the bankruptcy proceeding." Id. § 674.49(b). Third, the institution is required to follow the procedures set forth in subsection (c) if "it is properly served with a complaint in a proceeding under chapter 7, 11, 12 or 13 of the Bankruptcy Code, or under 11 U.S.C. [§] 1328(b), for a determination of dischargeability under 11 U.S.C. § 523(a)(8)(B) on the ground that repayment of the loan would impose an undue hardship on the borrower." Id. § 674.49(c)(1). Subsection (c) then sets forth several different obligations that the institution must undertake depending on the age of the loan and the costs of opposing the request for discharge. For example, "[i]f more than seven years of the repayment period on the loan . . . has passed before the borrower filed the petition for relief in bankruptcy, the institution may not oppose a determination of dischargeability requested . . . on the ground of undue hardship." Id. § 674.49(c)(2). Other obligations include determining whether repayment would impose an undue hardship, calculating the costs expected to be incurred if the institution determines that repayment will not impose an undue hardship, opposing the request for dischargeability if expected

-15-

costs do not exceed one-third of the total amount owed on the loan, and determining whether grounds exist for seeking a conversion or dismissal of a chapter 13 case. See id. § 674.49(c)-(e).

Because the contract explicitly states that KSU agrees to perform the obligations imposed by 34 C.F.R. § 674, we agree with the district court that by including this particular regulation in the contract KSU necessarily consented to perform certain functions in the federal bankruptcy court pursuant to § 674.49. The inclusion of this federal regulation in the contract so clearly binds KSU to suit in federal bankruptcy court that if the contract were enacted into legislation it would undoubtedly satisfy Edelman's waiver test. To conclude that KSU intended anything other than a waiver would defy logic, contract law, and the equitable principles of bankruptcy. Indeed, we do not think it is either reasonable or possible to read the agreement and corresponding regulation, along with the authorizing Kansas legislation, to conclude that KSU intended anything other than a waiver. Thus, we hold that the overwhelming implication of this record, including the statute, the contract, and the federal regulation, "otherwise reflect[s][] an unequivocal intent to waive . . . immunity." Ellis v. University of Kan. Med. Ctr., 163 F.3d 1186, 1195 (10th Cir. 1999).

We are aware of the type of language that has been held sufficient to abrogate or waive a state's Eleventh Amendment immunity in this context,

specifically, 42 U.S.C. § 2000d-7(a), under <u>Atascadero</u> standards.  <u>See</u> <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, __ U.S. __ , 118 S. Ct. 1989, 1996 (1998); <u>Lane v. Pena</u>, 518 U.S. 187, 198 (1996); <u>Litman v. George Mason Univ.</u>, No. 98-1742, 1999 WL 547910, at * __ , __ F.3d __ , __ (4th Cir. July 28, 1999); <u>Clark v. California</u>, 123 F.3d 1267, 1271 (9th Cir. 1997), <u>cert. denied</u> <u>sub nom.</u> <u>Wilson v. Armstrong</u>, __ U.S. __ , 118 S. Ct. 2340 (1998).  While this case does not present the exact language, it does contain what the language must impart–the State plainly must be on notice that by electing to participate in this federally funded program it accepts affirmative obligations to pursue or defend claims in federal court on the merits, despite its Eleventh Amendment immunity.  <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1, 17-18 (1981).  Given KSU's consent to these conditions, the applicable regulation, 34 C.F.R. § 674.49, with its many responsibilities and duties that must be performed in bankruptcy court, surely cannot be read to somehow preserve Eleventh Amendment immunity.

Additionally, we think that our decision in <u>Duke</u>, which holds that a state does not waive Eleventh Amendment immunity by merely "engaging in activities and entering contracts subject to federal regulation," is distinguishable for two reasons.  <u>Duke</u>, 131 F.3d at 1408.  First, the <u>Duke</u> court discussed the state's Eleventh Amendment claim in a very summary fashion.  Although we have little knowledge about the federal regulation which the state apparently agreed to obey,

-17-

we can infer from the facts of the case, which involved a child who was injured while camping in a national forest, that neither the Bankruptcy Code nor the federal regulation governing the Perkins Loan Program were implicated. Second, and more importantly, Duke did not expand the law concerning the Eleventh Amendment that was established in Edelman, Florida Nursing Home, and Atascadero. Because none of these Supreme Court cases considered whether a state entity waived immunity by agreeing to participate in federal bankruptcy court proceedings in its contract for a federal loan program, we do not think that Duke forecloses our finding such a waiver. To the contrary, we think that KSU's affirmative entry into an agreement which explicitly subjects it to federal bankruptcy court proceedings is wholly different from the rule that the state does not waive immunity by merely agreeing to obey general federal laws in participating in a federal program. This rule, which is based on the reality that agreeing to obey federal laws does not mean agreeing to be sued in federal court, is neither violated nor diminished by our conclusion today. In this case, KSU's entry into a contract which specifically requires it to abide by 34 C.F.R. § 674 means that KSU has unequivocally subjected itself to federal bankruptcy court jurisdiction pursuant to § 674.49 for purposes of the Perkins Loan Program.

KSU raises two additional arguments regarding whether it waived immunity. First, relying on the fact that a request for discharge can be made

before a federal bankruptcy court under chapters 7, 11, 12, or 13, or before a state court under chapter 11, see Innes, 207 B.R. at 957; 34 C.F.R. § 674.49(c)(1); see also 4 COLLIER ON BANKRUPTCY ¶ 523.03, at 523-17 (Lawrence P. King, ed., 15th ed. 1999) (noting that state courts may exercise jurisdiction to determine dischargeability of certain debts), KSU argues that the text of 34 C.F.R. § 674.49 does not establish unambiguously that a waiver would extend to federal bankruptcy court. See United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992). We disagree. In KSU's contract with the DOE, KSU expressly consented to follow the requirements of 34 C.F.R. § 674, which includes § 674.49. As we discussed above, § 674.49 sets forth several actions to be performed by an educational institution in federal bankruptcy court. We therefore think KSU agreed to perform obligations under *both* state and federal court. Our conclusion is supported by the fact that, under the comprehensive grants of authority to federal district courts and bankruptcy courts prescribed in 28 U.S.C. §§ 1334(b) and 157(a), respectively, discharge petitions are ordinarily filed in the federal bankruptcy court.[4] See also 28 U.S.C. § 157(b)(1) & (b)(2)(I) (indicating that bankruptcy court may have jurisdiction over core proceedings such as

---

[4]While civil proceedings under Title 11 may proceed in another jurisdiction if the bankruptcy court abstains, see 28 U.S.C. § 1334(c)(1) & (2), nothing in this provision changes our determination that KSU agreed to perform certain obligations in federal court.

determination of dischargeability of debt); Brown v. Felsen, 442 U.S. 127, 135-36 (1979) (stating that Congress granted bankruptcy courts exclusive jurisdiction to determine whether a debt is dischargeable based on the bankruptcy courts' expertise); Schwager v. Fallas (In re Schwager), 121 F.3d 177, 181 (5th Cir. 1997) (noting same).

Second, KSU argues that it did not waive immunity by merely agreeing to perform certain functions before the bankruptcy court because those obligations only require it to appear and move for a dismissal under the Eleventh Amendment. This is not a reasonable interpretation of the obligations to which KSU assented by entering into the agreement with the DOE because, as explained above, 34 C.F.R. § 674.49 contemplates a number of specific obligations by which KSU is bound and which clearly require more than moving for dismissal under the Eleventh Amendment. See 34 C.F.R. § 674.49(b)-(e).

Therefore, we hold that KSU knowingly and voluntarily waived its Eleventh Amendment immunity by agreeing, as a prerequisite to its participation in the Perkins Loan program, to undertake certain enumerated actions in federal bankruptcy court in the event of a claim for discharge filed by the student-borrower.

**C.**

-20-

Finally, even though we have concluded that KSU waived immunity by entering into an agreement with the DOE which subjects it to the jurisdiction of the federal bankruptcy court, we must examine whether the waiver is valid. This determination is based on whether KSU had the authority to waive Eleventh Amendment immunity. See Ford Motor Co., 323 U.S. at 467. We easily resolve this question by examining the enabling legislation, Kan. Stat. Ann. § 76-723. Nothing in the statute itself makes entering into a contract waiving immunity an *ultra vires* act. Indeed the contrary is true–this legislation explicitly gives KSU, as a state educational institution, expansive, unlimited authority to contract with the DOE so that KSU may participate in student financial assistance programs. Further, unlike in other Kansas statutes, there is no provision in § 76-723 disclaiming a waiver or prohibiting consent to waive. See, e.g., Kan. Stat. Ann. § 75-6116(g) (stating that "[n]othing in . . . the Kansas tort claims act shall be construed as a waiver by the state of Kansas of immunity from suit under the [Eleventh] Amendment); id. § 39-7,137 (stating same with respect to certain administrative proceedings for Kansas social welfare program). Accordingly, we hold that Kan. Stat. Ann. § 76-723 conferred upon KSU the power to waive Eleventh Amendment immunity.[5]

---

[5]Because we have determined that KSU was authorized to waive immunity, it is not necessary to identify a specific individual at KSU who was authorized to
(continued...)

## III.

In conclusion, we **AFFIRM** the decision of the district court for the foregoing reasons.

---

[5](...continued)
sign the contract with the DOE.  Further, Appellant has not argued that the individual who signed the contract was acting *ultra vires* or in derogation of his or her authority at the University.