**In re Tammy L. JANC, Debtor.**

**Tammy L. Janc, Plaintiff,**

v.

**Coordinating Board for Higher Education, Missouri Western State College, and U.S. Department of Education, Defendants.**

**Bankruptcy No. 99–40221–W–7.**
**Adversary No. 99–4198–1.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Aug. 8, 2000.

Tracy L. Robinson, Kansas City, MO, for debtor/plaintiff.

Judith M. Strong, Kansas City, MO, Patricia A. Molteni, Jefferson City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

This Adversary Proceeding comes before the Court at this juncture on the following pre-trial motions: (1) Defendant Coordinating Board for Higher Education's ("CBHE") Motion to Dismiss, filed June 16, 1999; (2) Plaintiff Tammy L. Janc's Motion for Summary Judgment on the Issue of Sovereign Immunity, filed on January 21, 2000; and (3) Defendant CBHE's Cross Motion for Summary Judgment on the Issue of Sovereign Immunity, filed March 20, 2000. Because these motions all hinge on the issue of whether CBHE has waived its Eleventh Amendment immunity from suit in federal court, the Court will rule on them together in this Memorandum Opinion and Order.[1]

## DISCUSSION

The facts of this case, unlike the issues, are not complicated. On April 19, 1999, the Debtor initiated the instant Adversary Proceeding to obtain the discharge, pursuant to 11 U.S.C. § 523(a)(8), of fourteen (14) student loans taken out at various times from 1991 to 1996 when she was a student at Missouri Western State College.

The Debtor's original and Amended Complaint listed CBHE, Missouri Higher Education Loan Authority ("MOHELA"), Missouri Western State College ("MWSC") and the U.S. Department of Education ("DOE") as defendants. According to the Amended Complaint, MWSC holds a claim against the Debtor for approximately $456.08; MOHELA holds a claim for approximately $36,651.39; CBHE holds a claim for approximately $10,409.08; and DOE is the ultimate guarantor on all of the loans. Since the filing of the Complaint, a default judgment has been entered against Defendant MWSC, and Defendant MOHELA has been dismissed as a party because it no longer owns any of the Debtor's loans. (Pursuant to MOHELA's agreement with CBHE, CBHE purchased all of the loans held by MOHELA upon the Debtor's default.) DOE also moved to be dismissed as a party to the action based on the fact that it does not currently hold any of the Debtor's loans and because it agrees to be bound by any determination of the Court, if the loans are later transferred to it pursuant to its guarantee agreement with CBHE. The Debtor opposed this Motion on the basis that DOE is a necessary party because it is the ultimate guarantor on the loans and for the reason that DOE's participation in discovery was necessary because its agreements with CBHE, MOHELA and MWSC allegedly bear directly on the Debtor's ability to maintain her § 523(a)(8) claim. The Court denied DOE's motion without prejudice stating, however, that it would consider allowing DOE to re-file its motion after the completion of discovery. At this point, then, the only remaining defendants in this Adversary Proceeding are CBHE and DOE.

CBHE filed the Motion to Dismiss now before the Court on June 16, 1999. The Motion's sole argument is that CBHE is

1. The following constitutes the Court's Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a).

immune from the jurisdiction of this Court because CBHE is a state agency and is thereby entitled to Eleventh Amendment sovereign immunity. The Debtor combined her Response to CBHE's Motion with a Motion for Summary Judgment on the Issue of Sovereign Immunity. CBHE subsequently filed a Cross–Motion for Summary Judgment on the Issue of Sovereign Immunity.

Our discussion of the issue of Eleventh Amendment sovereign immunity will follow the road map set out concisely by the Debtor in her Response/Motion for Summary Judgment. She posits, and we will answer, the following questions:

1. Did Congress successfully abrogate the Eleventh Amendment Immunity when it enacted 11 U.S.C. § 106?

2. If Congress did not successfully abrogate the Eleventh Amendment immunity by the enactment of 11 U.S.C. § 106, has CBHE waived its immunity in this action?

3. If Congress did not successfully abrogate the Eleventh Amendment immunity by the enactment of 11 U.S.C. § 106 and CBHE did not waive its immunity in this action, does the Court retain jurisdiction over the Debtor and the Debtor's estate sufficient to make a determination on the merits of the hardship claim?

Before we address these questions, however, we pause briefly to discuss Eleventh Amendment sovereign immunity and why it is an issue in the context of determinations of student loan dischargeability.

The Eleventh Amendment to the United States Constitution restricts federal jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. By its express terms, it appears only to prohibit suits against states by citizens, but the Supreme Court has long interpreted the Eleventh Amendment, in case law that has been described as "hoary" by more than a few courts,[2] to apply to all suits brought in federal court by any person against an unconsenting state.[3]

Section 523(a) of the Bankruptcy Code sets' forth eighteen categories of debts that are excepted from the general discharge granted to debtors pursuant to 11 U.S.C. §§ 727, 1141, 1228(b) or 1328(b). 11 U.S.C. § 523. For purposes of the present case, we are interested in § 523(a)(8). Section 523(a)(8) excepts from discharge any debt—

> for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). Whether a particular debt is excepted from discharge under § 523(a) is determined in an adversary proceeding and requires the filing of a complaint. Fed.R.Bankr.P. 4007 and 7001(6).[4] For most actions to determine the dischargeability of a debt, the creditor

**2.** *See e.g., Board of Regents of the University Texas System v. Walker,* 142 F.3d 813, 823 (5th Cir.1998); *Ranstrom v. Internal Revenue Service (In re Ranstrom),* 215 B.R. 454, 455 (Bankr.N.D.Cal.1997).

**3.** "Despite the narrowness of its terms, since *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty ..." *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2580, 115 L.Ed.2d 686 (1991).

**4.** The Plaintiff contends that the bankruptcy court may determine the dischargeability of a debt without an adversary proceeding. We disagree and explain our reasons for doing so in Part III of the Opinion.

seeking to have its debt excepted from discharge is required to file the complaint and bears the burden of proof.[5] Under § 523(a)(8), however, the debtor must institute the action and bears the burden of proving that excepting the student loan from discharge will impose an undue hardship.[6] Because § 523(a)(8) and, by implication, Federal Rules of Bankruptcy Procedure 4007 and 7001(6), require the filing of a complaint against the creditor to whom the debt is owed, the issue of service, summons, and the bankruptcy court's jurisdiction over the defendant creditor must be considered. If a student loan is held by a private entity such as a bank or private school, there is usually no question whether the entity is subject to the jurisdiction of the bankruptcy court. However, if the loan is held by a state agency or a state-sponsored educational institution, the specter of Eleventh Amendment sovereign immunity frequently surfaces, and generally, if the state entity asserts its Eleventh Amendment sovereign immunity, which increasingly appears to be the case in student loan dischargeability actions, the

bankruptcy court loses its jurisdiction over that entity, and therefore cannot proceed to determine the dischargeability of the student loan.[7]

■ A state's Eleventh Amendment sovereign immunity is not absolute, however. It may be abrogated by Congress, *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), or waived by a state. *Id.* at 65, 116 S.Ct. 1114. The abrogation and waiver of sovereign immunity are the subjects of the first two issues raised by Debtor.

## I. 11 U.S.C. § 106.

■ Section 106 of the Bankruptcy Code is the section in which Congress attempted to abrogate sovereign immunity in bankruptcy proceedings. It provides, in pertinent part:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

5. Section 523(a)(15) is the only other exception to discharge that places the burden of proof on the debtor. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.04 p. 523–19 (Lawrence P. King, et al., 15th ed. rev.1999). Section 523(a)(15) excepts from discharge debts other than alimony, maintenance or child support that are incurred in the course of a divorce or separation unless (i) the debtor does not have the ability to pay from income not necessary for support of the debtor and the debtor's dependents or for the operation of the debtor's business, or (ii) discharging such debt would result in a disproportionate benefit to the debtor. 11 U.S.C. § 523(a)(15).

6. This characteristic of § 523(a)(8) has been described as both self-effectuating/executing, and not self-effectuating/executing. *Compare In re Holland,* 230 B.R. 387, 391 (Bankr. W.D.Mo.1999) (self-effectuating); *In re Key,* 128 B.R. 742, 743 (Bankr.S.D.Ohio 1991) ("the provision excepting student loans from discharge 'is intended to be self-executing'") (quoting Senate Report No. 95–989, 95th Cong.2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862–5865), *with In re Stout,* 231 B.R. 313, 315 (Bankr. W.D.Mo.1999) (non self-effectuating). The confusion is understandable considering that

the characterization of § 523(a)(8) will depend on the perspective from which it is viewed. Viewed from the creditor's perspective, § 523(a)(8) appears to be self-effectuating because the debt will automatically be nondischargeable without further action being taken. Viewed from the debtor's perspective, though, he or she must institute a dischargeability proceeding in order to get the desired relief; thus, the statute appears to be non self-effectuating. Although this Court previously characterized the statute as non self-effectuating, *Stout, supra,* upon further consideration, we believe that the term "self-effectuating" better describes the operation of the statute, inasmuch as § 523(a) is entitled "Exceptions to Discharge," and § 523(a)(8) excepts a debt from the discharge without the need for any further action by a creditor.

7. As stated previously, our position on this issue, which we discuss in Part III of the Opinion, is contrary to the position taken by the Debtor, who contends that we can proceed to determine the dischargeability of the student loan even after the state defendant is dismissed from the action.

(1) Sections 105, 106 ... 523 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

11 U.S.C. § 106(a). We find a thorough discussion of the origin, development, and meaning of § 106 in *Schmitt v. Missouri Western State College (In re Schmitt)*, 220 B.R. 68, 71 (Bankr.W.D.Mo.1998). In *Schmitt*, Judge Arthur B. Federman of this Court wrote:

> The Bankruptcy Code (the Code), as enacted in 1978, recognized the drastic impact that state claims of sovereign immunity could have on these bankruptcy proceedings. Section 106 of the Code, as originally enacted, provided for waiver of sovereign immunity in certain narrow circumstances. In *Hoffman v. Connecticut Department of Income Maintenance*, the Supreme Court held that in enacting section 106, Congress had not intended to waive states' sovereign immunity as to causes of action for preferential transfers. The Court did not find in the text of the statute an "unmistakably clear" intent by Congress to waive sovereign immunity, so no such waiver was found. Thereafter, in order to make it perfectly clear, Congress amended the Code in 1994 to provide that sovereign immunity is abrogated as to governmental units with respect to

certain specific sections of the Code. As relevant here, Congress specifically abrogated the sovereign immunity defense as to actions brought for a determination of dischargeability under Section 523 of the Code.

> The application of Section 106 is dependent on the power of Congress to abrogate sovereign immunity in light of the Eleventh Amendment to the Constitution.... In *Pennsylvania v. Union Gas Co.*, [491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1], the Court ... found that the Interstate Commerce Clause granted Congress the power to abrogate state sovereign immunity. But, in *Seminole Tribe of Florida v. Florida*, the Court overruled *Union Gas* and held that Congress may not use its Article I powers to abrogate sovereign immunity.[8] To do so, the Court held, would violate the Court's expansive interpretation of the Eleventh Amendment. Relying on *Seminole Tribe*, several lower courts, including this one, have held that Section 106(a), which purports to abrogate sovereign immunity, is contrary to the Eleventh Amendment, and therefore unconstitutional.

*Id.* at 70–71 (citations and footnotes omitted).

Shortly after Judge Federman's decision in *Schmitt*, the District Court for the Western District of Missouri also found 11 U.S.C. § 106(a) to be unconstitutional.[9]

**8.** Like the Interstate Commerce Clause, the power to establish "uniform laws on the subject of bankruptcies throughout the United States," is also an Article I power. U.S. CONST. Art. I, § 8, cl. 4.

**9.** The District Court wrote:

> Section 106(a) of the Bankruptcy Code purports to abrogate the states' Eleventh Amendment immunity, but it must be analyzed to determine whether Congress passed section 106(a) pursuant to a Constitutional provision permitting it to abrogate Eleventh Amendment protections. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58–59, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The *Seminole Tribe* Court engaged in an extensive discussion of

the history and purposes of the Eleventh Amendment, noting that it was designed to protect state sovereignty from federal judicial power. The Court observed that the Fourteenth Amendment empowers Congress to abrogate Eleventh Amendment protections because it contains prohibitions targeted directly to the states and specifically empowers Congress to enforce its provisions. Thus, the Fourteenth Amendment, by expressly expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution. 517 U.S. at 59, 116 S.Ct. 1114. With respect to legislation passed under some other grant of Congressional power, "[t]he Eleventh Amendment restricts the judicial power un-

*United States Dep't of Educ. v. Rose* (*In re Rose*), 227 B.R. 518 (W.D.Mo.1998). The Debtor concedes that we are bound by the decision of the District Court, but nevertheless urges us to depart from that holding and adopt the position of *Willis v. The State of Oklahoma, ex rel. Oklahoma Tax Commission* (*In re Willis*), 230 B.R. 619 (Bankr.E.D.Okla.1999),[10] in light of the fact that the Eighth Circuit Court of Appeals has specifically declined to address the issue. *Rose v. United States Dep't of Educ.* (*In re Rose*), 187 F.3d 926, 930 (8th Cir.1999). The court in *Willis* concluded that § 106 was enacted pursuant to § 5 of the Fourteenth Amendment to the Constitution and therefore is a lawful, valid exercise of Congress's authority to abrogate the State's sovereign immunity. *Willis*, 230 B.R. at 623. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 71–74, 116 S.Ct. 1114, 1131–32, 134 L.Ed.2d 252 (1996) (holding that Congress may abrogate sovereign immunity through legislation if the intent to do so is unequivocally expressed in the legislation and the legislation is enacted under § 5 of the Fourteenth Amendment). Regardless of the potential merits or shortcomings of the position taken by the court in *Willis*, this Court is, indeed, bound by the decision of the District Court, which specifically re-

jected this argument,[11] and we will not depart from established precedent. *See also, May v. United States Internal Revenue Service* (*In re May*), 247 B.R. 786, 794 (Bankr.W.D.Mo.2000); *Schmitt*, 220 B.R. at 71.

Having stated the Court's position that Congress' attempted abrogation of Eleventh Amendment sovereign immunity through 11 U.S.C. § 106 is unconstitutional, we now turn to the issue of whether CBHE has waived sovereign immunity.

## II. Waiver of Eleventh Amendment Sovereign Immunity.

■ It is well established that a state may waive its Eleventh Amendment sovereign immunity. *See Seminole*, 517 U.S. at 65, 116 S.Ct. at 1129. However, "the test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). To date, the Supreme Court has identified only three ways in which a state may effect a waiver of its Eleventh Amendment sovereign immunity: (1) by state statute or constitutional provision, *see Pennhurst State School and Hospital v. Halderman*,

der Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole Tribe*, 517 U.S. at 72–73, 116 S.Ct. 1114.

There is no serious suggestion that the Bankruptcy Act as a whole, or section 106 of the Bankruptcy Act in particular, was enacted pursuant to Congress's powers under the Fourteenth Amendment. Undoubtedly, these provisions were passed pursuant to Congress's power to establish "uniform Laws on the subject of Bankruptcies throughout the United States," which power lies under Article I of the Constitution (and, interestingly, one clause removed from the Indian Commerce Clause, which was the subject of *Seminole Tribe*). *See* U.S. Const. art. I, § 8, cl. 4. Based on *Seminole Tribe,* this Court joins those other courts which have held that section 106(a) is an invalid attempt to abrogate the states' protections under the Eleventh Amend-

ment. *E.g., Department of Transp. & Dev. v. PNL Asset Management Co., LLC* (*In re Fernandez*), 123 F.3d 241, 244 (5th Cir.1997); *Schlossberg v. State of Maryland Comptroller of the Treasury* (*In re Creative Goldsmiths of Washington, D.C., Inc.*), 119 F.3d 1140, 1145–47 (4th Cir.1997), *cert. denied*, 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998); *see also Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 105, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (Scalia, J., concurring). *Rose*, 227 B.R. at 522–23.

10. *See also, Mather v. Oklahoma Employment Sec. Comm'n* (*In re Southern Star Foods, Inc.*), 190 B.R. 419, 426 (Bankr.E.D.Okla.1995) (holding that § 106 is constitutional); *In re Straight*, 209 B.R. 540 (D.Wyo.1997) (same); *Headrick v. State of Georgia* (*In re Headrick*), 203 B.R. 805 (Bankr.S.D.Ga.1996) (same).

11. *Rose*, 227 B.R. at 522–23.

465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); (2) by participation in a federal program, *see Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974); or (3) by certain conduct in federal court, *see Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–84, 27 L.Ed. 780 (1883). We review these methods in detail:

■ First, a waiver of Eleventh Amendment immunity by state statute or constitutional provision must be clear and unequivocal in order for it to be effective. *Seminole,* 517 U.S. at 55–56, 116 S.Ct. at 1122–23. It must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *College Savings Bank. v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 678, 119 S.Ct. 2219, 2227, 144 L.Ed.2d 605 (1999) (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (internal quotation marks omitted)). The following examples of provisions in state statutes and constitutions, which the Supreme Court held would *not* effectuate a waiver, give us an idea of how clear the waiver must be: a statement consenting to suit in the courts of its own creation does not waive immunity, *Smith v. Reeves,* 178 U.S. 436, 441–45, 20 S.Ct. 919, 921–23, 44 L.Ed. 1140 (1900); a declaration of the state's intention that it or one of its agencies can "sue or be sued" does not waive immunity, *Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); and a statement authorizing suits against the state or one of its agencies "in any court of competent jurisdiction," does not waive immunity. *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 577–79, 66 S.Ct. 745, 747, 90 L.Ed. 862 (1946).

■ Second, mere participation in a federal program or an agreement to recognize and abide by federal laws, regulations, and guidelines is insufficient to waive Eleventh Amendment immunity. *See Atascadero,* 473 U.S. at 246–47, 105 S.Ct. at 3149–50 (holding that participation in federal programs and receipt of federal funds under such programs "fall[ ] far short of manifesting a clear intent … to waive immunity"); *Florida Nursing Home Ass'n,* 450 U.S. at 150, 101 S.Ct. at 1034 (stating that state agency's explicit agreement "to obey federal law in administering the federal program can hardly be deemed an express waiver of Eleventh Amendment immunity"); *Edelman,* 415 U.S. at 673–74, 94 S.Ct. at 1360–61 (holding that neither mere participation in a federal program nor a provision requiring compliance with federal law is sufficient to establish that the state consented to be sued in federal court). Like a waiver by state statute or constitutional provision, this method requires an unequivocal indication that the state intends to consent to be sued in federal court. *Atascadero,* 473 U.S. at 238 n. 1 & 241, 105 S.Ct. at 3145 n. 1 & 3146–47; *College Sav. Bank,* 527 U.S. at 679–83, 119 S.Ct. 2219, 2228–29, 144 L.Ed.2d 605 (rejecting *Parden's*[12] doctrine of constructive consent because it conflicts with the longstanding requirement that a waiver of a constitutional right must be unequivocally expressed and altogether voluntary). Congress may legitimately condition a state's receipt of federal funds and/or participation in a federal program upon a waiver of Eleventh Amendment immunity, but it must do so "unambiguously … enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation." *South Dakota v. Dole,* 483 U.S. 203, 207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (citing *Pennhurst,* 451 U.S. at 17, 101 S.Ct. at 1539).

---

12. *Parden v. Terminal Ry. of Alabama State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12

L.Ed.2d 233 (1964)

Finally, the Supreme Court has held that a state may waive Eleventh Amendment immunity when the state voluntarily enlists the jurisdiction of the federal courts. *See College Savings Bank,* 527 U.S. at 675–77, 119 S.Ct. at 2226; *Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 555 n. 2, 42 L.Ed.2d 532 (1975); *Clark v. Barnard, supra; Hankins v. Finnel,* 964 F.2d 853, 856 (8th Cir.1992); *United States v. Mottolo,* 605 F.Supp. 898, 910 (D.N.H.1985) ("Filing suit as a plaintiff constitutes a waiver of Eleventh Amendment immunity ... with respect to any counterclaim asserted by a defendant which arises out of the same event underlying the State's claim and which is asserted defensively in recoupment for the purpose of diminishing the State's recovery. This implied waiver does not extend to any counterclaim unrelated to the State's claim or asserted for the purpose of obtaining an affirmative judgment against the State."). Although this method of waiver has been generally referred to as waiver by "conduct," or "affirmative conduct," the characterization is somewhat misleading, inasmuch as the only conduct the Court has recognized as sufficient to waive Eleventh Amendment immunity has been in relation to a State's active participation in a federal court proceeding. The filing of a proof of claim or the initiation of an adversary proceeding in a bankruptcy case falls into this category and constitutes a waiver of immunity. *See e.g., In re Rose,* 215 B.R. 755, 762 (Bankr.W.D.Mo.1997). But, in this case, CBHE hasn't done either. CBHE has only appeared in this Court for the limited purpose of filing the instant Motion to Dismiss, and that does not constitute a waiver of Eleventh Amendment immunity. *See In re Secretary of Dept. of Crime Control and Public Safety (Barfield v. Blackwood),* 7 F.3d 1140, 1148 n. 6 (4th Cir.1993) (stating that the appearance by a state official in federal court for the limited purpose of contesting jurisdiction does not

constitute a waiver of immunity); *In re Koehler,* 204 B.R. 210, 220 (Bankr.D.Minn. 1997) (same).

With this framework in mind and in light of the Supreme Court's position that courts should indulge every reasonable presumption against waiver, *College Sav. Bank,* 527 U.S. at 681–83, 119 S.Ct. at 2229, we turn to our attention to an evaluation of the Debtor's claim that CBHE has waived its Eleventh Amendment immunity.

The Debtor claims that CBHE has waived its Eleventh Amendment immunity[13] in two ways: (1) "by its enabling statutes, the terms of the Applications and Promissory Notes, and the various agreements with the U.S. Department of Education ('DOE')"; and (2) *"regardless of the enabling statutes,* by virtue of the express terms of some of the Applications and Promissory Notes and the various agreements with DOE." (emphasis added) In other words, the Debtor is arguing that CBHE has waived its sovereign immunity, regardless of whether the statutes enabling CBHE contained or authorized a waiver. We decline to so readily dismiss the importance of the enabling statute.

It is well established that in order for a waiver of Eleventh Amendment immunity by a State agency or official to be effective, it ·must be authorized by the state legislature or a constitutional provision. *See Ford Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (holding that appearance in suit by state attorney general would waive state's immunity only if attorney general had authority under state law to waive immunity); *Schlossberg v. Maryland (In re Creative Goldsmiths of Wash., D.C., Inc.),* 119 F.3d 1140, 1148–49 (4th Cir.1997) (confirming that state generally waives Eleventh Amendment immunity to the extent that its "assertions in a state-instituted federal action, including

---

13. The ability of CBHE to claim Eleventh Amendment immunity as an arm of the State is not at issue. However, CBHE's status as

an arm of the state does not, by any means, automatically bestow upon it the authority to waive that immunity.

those made with regard to a ... proof of claim, amount to a compulsory counterclaim" but holding that Maryland law did not authorize waiver); *Eagleton v. Hall*, 389 S.W.2d 798, 801 (Mo.1965) ("Consent or appearance by an officer [of the State], who has no authority to waive the immunity of the state, is ineffectual.") (quoting *State v. Gulf Oil Corp.*, 166 S.W.2d 197 (Tex.Civ.App.1942)). Therefore, the Court cannot proceed to determine whether CBHE waived its Eleventh Amendment immunity without determining first whether CBHE had the authority to effect such a waiver.

■ We find the pertinent "enabling statutes" for CBHE in Mo.Rev.Stat. § 173.005, *et seq.* Section 173.005.2 created CBHE as the head of the Missouri Department of Higher Education, and section 173.050, entitled "Powers of coordinating board," authorizes CBHE to:

(1) Serve as the official state agency to plan for, define and recommend policies concerning the allocation of federal funds where such funds, according to provisions of federal legislation, are to be received and allocated through an official state agency;

(2) Apply for, receive, and utilize funds which may be available from private nonprofit foundations and from federal sources for research on higher education needs and problems in the state;

(3) Subcontract for research and planning services from individuals, colleges or universities, or nonprofit corporations.

Mo.Rev.Stat. § 173.050. Section 173.141, entitled "Authorized actions of the board," gives the board the power to:

(1) Enter into agreements with and receive grants from the United States government in connection with federal programs of assistance to students of postsecondary education;

(2) Contract with public agencies or private persons or organizations for the purpose of carrying out the administra-

tive functions imposed upon it by sections 173.095 to 173.180;

(3) Call upon agencies of the state which have actuarial or financial expertise for consultation and advice, and upon any agency of the state for assistance in the location of delinquent borrowers.

Mo.Rev.Stat. § 173.141. We also take note of sections 173.105 to 173.187, which deal with various aspects of student loan programs. In particular we examine the section cited by the Debtor, § 173.150, "Recovery or assignment of loans:"

The board, by rules and regulations, shall determine the policy of collections and recovery of loans, including the use of private collection agencies or assigning loans to the United States Secretary of Education. Pursuant to the rules and regulations of the board the department may institute action to recover any amount due the program in any loan transaction, use private collection agencies, or otherwise carry out the policy set by the board.

Mo.Rev.Stat. § 173.150. Finally, we review § 173.115 which outlines, in detail, the procedures prescribed in the event of a borrower's default. Because § 173.115 is extremely long, it will be included in the Opinion as Attachment A.

Sorting through the tangle of statutes and regulations cited by the Debtor, the Court understands the Debtor's argument that CBHE has the authority to waive and has waived Eleventh Amendment immunity along the following lines: (a) Section 173.170 instructs CBHE to "adopt regulations establishing standards for determining eligibility of loan agreements to be guaranteed under the provisions of sections 173.095–173.180 .... [which] shall provide for, but shall not be limited to ... (9) Procedures in the event of default by the borrower." Mo.Rev.Stat. § 173.170.(b) CBHE adopted numerous rules and regulations, which in turn, incorporated a Department of Education publication called the "Common Manual, Unified Student Loan Policy." The Debtor directs our at-

tention to Sections 8.2.D and 8.2.E of the Common Manual, which state in pertinent part:

### Section 8.2.D

If a borrower defaults on a loan and then files a bankruptcy petition, the lender must file a default claim ... Before filing the default claim, the lender—as holder of the loan—is responsible for performing any and all bankruptcy activity required by the court and responding to all bankruptcy correspondence.

\* \* \*

A lender must file a bankruptcy claim if either of the following conditions exist:

\* \* \*

A borrower files a petition for undue hardship (or adversary complaint) under a Chapter 7 or 11 bankruptcy. [§ 682.402(f)(5)(i)(A) and (C); 971 PL 105–244]

### Section 8.2.E

After a guarantor purchases a bankruptcy claim, it may diligently contest the discharge of the loan with the bankruptcy court ...

(c) The Common Manual incorporates a number of other federal regulations, including 34 C.F.R. § 682.402, which provides in pertinent part:

(i) Guaranty agency participation in bankruptcy proceedings—

(1) Undue hardship claims.

(i) In response to a petition filed with regard to any bankruptcy proceeding by the borrower for discharge under 11 U.S.C. § 523(a)(8)(B) on the grounds of undue hardship, the guaranty agency shall determine on the basis of reasonably available information—

(A) Whether the first payment on the loan was due less than 7 years (exclusive of any applicable suspension of the repayment period) before the filing of the petition for relief commencing the bankruptcy case; and

(B) Whether repayment under either the current repayment schedule or any adjusted schedule authorized under this part would impose an undue hardship on the borrower and his or her dependents.

(ii) If the agency determines that repayment would not constitute an undue hardship, the agency shall then determine whether the expected costs of opposing the discharge petition would exceed one-third of the total amount owed on the loan, including principal, interest, late charges, and collection costs.

(iii) If the expected costs of opposing the discharge petition do not exceed one-third of the total amount owed on the loan, the agency shall—

(A) Oppose the borrower's petition for a determination of dischargeability; and

(B) If the borrower is in default on the loan, seek a judgment for the amount owed on the loan.

(iv) In opposing a petition for a determination of dischargeability on the grounds of undue hardship, a guaranty agency may agree to discharge of a portion of the amount owed on a loan if it reasonably determines that the agreement is necessary in order to obtain a judgment on the remainder of the loan.

Therefore, the Debtor reasons, because the legislature authorized CBHE to adopt regulations regarding the procedures to be followed in the event of a borrower's default, and the regulations adopted require CBHE to submit to the jurisdiction of the bankruptcy court, *i.e.*, participate in the bankruptcy process and file a claim in the event of a dischargeability proceeding, Eleventh Amendment immunity has been properly waived by the Missouri legislature.

First of all, we must separate the wheat from the chaff. The only relevant materials for our consideration at this point in the analysis are the enabling statutes enacted by the Missouri Legislature. The various regulations adopted by CBHE and relied on by the Debtor only come into

play if we find that the enabling statutes authorize CBHE to waive Eleventh Amendment immunity.

Considering the stringent standards set forth by the Supreme Court for the waiver of Eleventh Amendment immunity, this Court is not persuaded that CBHE's enabling statutes either waived immunity or authorized CBHE to waive immunity. The Court does not find any explicit, unequivocal statements that the State intended to waive sovereign immunity when it created and empowered CBHE to perform its statutory duties, nor does it find that a waiver has been "overwhelmingly implied" by the Missouri General Assembly's authorization of CBHE to promulgate regulations on the procedures in the event of default.[14] In fact, at the closing of her argument, the Debtor appears to acknowledge that there has been no knowing or voluntary waiver by the Missouri Legislature. She states:

> To think that the Missouri Legislature even contemplated the type of action at issue when it enacted the various enabling statutes, would be the same as thinking that the Legislature took an entire stack of straw and individually examined each piece to see if it was good or bad or too long or too short or even if it was the right color or texture. This is simply not the case, the Missouri Legislature wanted the massive benefits of all the federal guaranteed student loan programs and authorized its agencies to participate, regardless of the burdens.[15]

The Supreme Court's stance on this issue, though, clearly indicates that a waiver of Eleventh Amendment immunity is a "piece of straw" that must be considered separately, or at least the overwhelming implication must be that the legislature knew that that particular piece of straw was in the haystack. Consequently, the Court finds that the Missouri Legislature has not waived Eleventh Amendment immunity for CBHE, nor has it authorized CBHE to waive that immunity.

■■ Under the participation analysis, the result is the same—there has been no waiver. As outlined above, in order for a state to waive Eleventh Amendment immunity, "the statute creating the federal spending program must contain a clear, unambiguous warning that Congress intends to exact waiver of Eleventh Amendment immunity as a condition for participating in the program and . . . the state must have participated in the federal spending program." *Bradley v. Arkansas Dept. of Educ.*, 189 F.3d 745, 757 (8th Cir.1999) (citing *Atascadero*, 473 U.S. at 247, 105 S.Ct. at 3149).

Upon examination of the various statutes governing the Federal Family Educational Loan Program (FFELP) in which CBHE participates[16] and the related agreements thereunder CBHE entered into with DOE (too voluminous to reproduce here), we find that the statutes and agreements are devoid of any "unambiguous warning" that the receipt of federal funds is conditioned upon a waiver of Eleventh Amendment immunity.[17] The stat-

---

**14.** In contrast, examples of express waivers of Eleventh Amendment immunity can be found in Missouri Revised Statutes § 262.700 and § 27.060. Section 262.700, which establishes a multi-state commission to assure the viability of dairy farming, states that the commission shall have the power "[t]o sue and be sued in any state *or federal court*," Mo.REV. STAT. § 262.700(d)(1) (emphasis added), and section 27.060 authorizes the attorney general to institute proceedings to protect the rights and interests of the state in "whatever court or jurisdiction such action may be necessary." Mo.REV.STAT. § 27.060.

**15.** Debtor/Plaintiffs' Response to Defendant Coordinating Board for Higher Education's Motion to Dismiss Combined with Motion for Summary Judgment on the Issue of Sovereign Immunity and Suggestions in Support, p. 26.

**16.** See 20 U.S.C. §§ 1071, *et seq.*

**17.** This analysis is unaffected whether or not we include the agreements between MWSC and DOE in our determination.

utes place numerous "conditions" on the receipt of federal funds through the program,[18] but the only potentially "jurisdictional language" (as the Debtor puts it) or conditions that allude to federal jurisdiction contained in the statutes and agreements require that the guarantee agency "comply with ... applicable Federal law or Regulations," and that the agreements comply with and be interpreted in light of the Higher Education Act of 1965[19] and regulations thereunder, which include 34 C.F.R. § 682.[20] And those conditions are insufficient; the Supreme Court has previously determined that provisions requiring compliance with federal law are not sufficient to establish that the state consented to be sued in federal court, *Edelman,* 415 U.S. at 673–74, 94 S.Ct. at 1360, and this Court will not consider *regulations* in its determination of whether *statutes* provide a state with a clear, unambiguous warning that participation in the program is conditioned upon a waiver of immunity. *See Virginia Department of Education v. Riley,* 106 F.3d 559 (4th Cir.1997) (refusing to look at regulations accompanying a stat-ute to clarify whether a statute unambiguously conditioned the States' receipt of federal moneys). *See also, Gregory v. Ashcroft,* 501 U.S. 452, 464, 111 S.Ct. 2395, 2403, 115 L.Ed.2d 410 (1991) ("Inasmuch as this Court in *Garcia*[21] has left primarily to the political process the protection of the States against intrusive exercises of Congress' [Article I] powers, we must be absolutely sure that Congress intended such an exercise."). As one court has put it:

> A spending power provision must read like a prospectus and give funding recipients a clear signal of what they are buying. The Court has explained, "By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation."

*Davis v. Monroe County Board of Education,* 120 F.3d 1390, 1399 (11th Cir.1997) (quoting *Pennhurst,* 451 U.S. at 17, 101 S.Ct. at 1540) *overruled on different grounds by* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).[22]

**18.** *See* 20 U.S.C. §§ 1071(a), 1078(c), 1080a(a) and 1082(p).

**19.** Codified in 20 U.S.C. § 1078.

**20.** On this point, the Court notes that 34 C.F.R. § 682.402(i)(1)(iv) was amended in November 1999 to read: "(iv) The guaranty agency must use diligence and may assert any defense consistent with its status under applicable law to avoid discharge of the loan. Unless discharge would be more effectively opposed by not taking the following actions, the agency must—(A) Oppose the borrower's petition for a determination of dischargeability ..." Although not controlling in the case presently before the bar, which was filed prior to the amendment, this amendment lends substantial support to the State's contention that Congress did *not* intend participation in the federal loan programs affected by this regulation to be conditioned upon a waiver of Eleventh Amendment immunity.

**21.** *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

**22.** At this point, the Court believes it is necessary to address the Tenth Circuit Court of Appeals' recent holding in *In re Innes,* 184 F.3d 1275 (10th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1530, 146 L.Ed.2d 345, although it is not relied on directly by the Debtor. In *Innes,* the Tenth Circuit was faced with an almost identical issue, *i.e.,* whether a state educational institution (Kansas State University, "KSU") and agency (State of Kansas Higher Education Assistance Foundation) waived Eleventh Amendment immunity by entering into contracts with DOE that obligated the state institution to abide by certain federal regulations, namely C.F.R. § 674 (one of the same regulations at issue here). The court found that KSU's enabling statute, KAN.STAT. ANN. § 76–723, which gave it authority to enter into contracts with DOE to participate in student loan programs, conferred upon KSU the power to waive Eleventh Amendment immunity. *Id.* The court reasoned that the grant of authority to enter into a contract that (purportedly) required a waiver of sovereign immunity, in the absence of a provision "disclaiming a waiver or prohibiting consent to waive" sovereign immunity, which is contained in other Kansas statutes (*see e.g.,* KAN. STAT.ANN. § 75–6116(g)), was sufficient to give KSU the power to waive Eleventh Amendment immunity. *Id.* at 1284.

Even if we were willing to look to regulations, notably those regarding the procedures a participating agency is supposed to take in the event of a borrower's bankruptcy, contained in 34 C.F.R. § 682, to determine whether Congress intended to condition the receipt of funds on a waiver of Eleventh Amendment immunity, we would still find that the condition was not sufficiently clear. In addition to the fact that those regulations are devoid of any explicit condition of waiver, the notion that Eleventh Amendment immunity is waived when a state files a claim in a bankruptcy is not entirely unambiguous; rather, it is only clear in reference to another statute, 11 U.S.C. § 106(b), or case law. *See e.g., Gardner v. State of New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947). *But see, In re Straight*, 248 B.R. 403 (10th Cir. BAP 2000) (holding that the filing of a proof of claim by a state entity does *not* waive sovereign immunity). It is difficult to reconcile the Supreme Court's dictate that the condition be clearly expressed with the reality that the language implying such a waiver at issue here only does so by reference to another statute or judicial precedent.

This Court declines to adopt the holding in *Innes* because we believe that it runs afoul of the Supreme Court's directive that waivers of Eleventh Amendment immunity must be express. Quite frankly (but with all due respect), the Court is rather perplexed as to how the absence in an enabling statute of a prohibition against a waiver of Eleventh Amendment immunity combined with a grant of power to enter into contract, which happens to reference a federal regulation, which impliedly requires a waiver of sovereign immunity by filing a proof of claim in the event of a borrower's bankruptcy, satisfies the Supreme Court's stringent requirement that waivers be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *College Sav. Bank*, 527 U.S. at 678, 119 S.Ct. at 2227. The *Innes* court justified its position by stating: "The inclusion of this federal regulation [C.F.R. 674.49] in the contract so clearly binds KSU to suit in federal bankruptcy court that *if the contract were enacted into legisla-*

The Debtor advances another argument, similar to one based on waiver by participation, which states that: CBHE entered into various agreements with DOE; these agreements require CBHE to submit to the jurisdiction of the bankruptcy court; and therefore, pursuant to Mo.Rev.Stat. § 490.460[23] and the holding in *V.S. DiCarlo Construction Co., Inc. v. Missouri*, 485 S.W.2d 52, 54 (Mo.1972) ("DiCarlo"), the waivers are effective. Aside from the fact that the Court has already rejected the contention that the agreements into which CBHE entered with DOE effect a waiver of Eleventh Amendment immunity, the Debtor's argument fails for two additional reasons.

First, the Debtor's argument is based on an erroneous reading and application of *DiCarlo* and Mo.Rev.Stat. § 490.460. In *DiCarlo*, the Supreme Court of Missouri held that, pursuant to § 490.460, when the State enters into a contract, validly authorized by the legislature, it "lays aside whatever privilege of sovereign immunity it otherwise possesses ..." to the extent that it can sue and be sued on the contract *in state court. DiCarlo*, 485 S.W.2d at 54. Although the Debtor appears to admit that the holding in *DiCarlo*, and by implication

*tion* [sic] it would undoubtedly satisfy *Edelman's* waiver test." *Innes*, 184 F.3d at 1282. In this Court's opinion, however, the *Innes* Court overlooks the essential fact that the contract has *not* been enacted into legislation, and until it is, *Edelman's* waiver test is not satisfied.

**23.** Section 490.460 provides:

Copies of contracts entered into by individuals with the state, or any officer thereof, or with any county, or with any person for the benefit of any county, under or by authority of any law, or the lawful order of any court, the originals of which are, by law or the lawful order of any court, in the custody and keeping of any officer, duly certified and attested by the official seal of such officer, or, if such officer have no official seal, then verified by the affidavit of such officer, may be sued upon, and shall be received in evidence, to all intents and purposes, as the originals themselves.
Mo.Rev.Stat. § 490.460.

§ 490.460, only applies to actions against the State in state court, she urges the Court to use the broad language employed in *DiCarlo*[24] as a springboard to transform Missouri's waiver of common law sovereign immunity in state court, *i.e.*, the "sue and be sued" language of § 490.460, into a waiver of Eleventh Amendment immunity in federal court. We fail to see how the holding of *DiCarlo,* which does not even mention Eleventh Amendment immunity, trumps the Supreme Court's decision in *Florida Nursing Home Ass'n,* which clearly states that general "sue and be sued" provisions in state statutes and constitutional provisions do *not* work a waiver of Eleventh Amendment immunity. *Florida Nursing Home Assn.,* 450 U.S. at 149–50, 101 S.Ct. at 1034. Accordingly, we decline to extend the holding in *DiCarlo.*

Second, even if § 490.460 was interpreted to encompass waivers of Eleventh Amendment immunity under the holding in *DiCarlo,* the Court believes that (1) (as stated above) the contracts at issue do not require waivers of Eleventh Amendment immunity and (2) even if they did, the Debtor is not the person to seek specific performance of those contracts. The Debtor has asserted absolutely no basis for standing to enforce the terms of the contracts or agreements between CBHE and DOE. Furthermore, even according to the terms of those contracts, the sanction for failing to comply with the terms of the contracts, *e.g.,* the failure to file a claim in a defaulted borrower's bankruptcy, is not a waiver of Eleventh Amendment immunity, but rather civil penalties or the

loss of eligibility to participate in federal student loan programs.[25]

For the reasons stated above, the Court finds that the Debtor has failed to show, under the stringent standards set forth by the Supreme Court, that the State waived Eleventh Amendment sovereign immunity when it created CBHE or that the State gave CBHE the authority to waive Eleventh Amendment sovereign immunity.

### III. The Bankruptcy Court's Jurisdiction to Determine the Merits of the Hardship Claim.

■ The Debtor's final argument, although somewhat novel, is also unavailing. The Debtor contends that even if CBHE's claim of Eleventh Amendment immunity is successful and CBHE is thereby dismissed from this adversary proceeding, the bankruptcy court's jurisdiction over the Debtor's bankruptcy estate is sufficient to allow the Court to proceed to hear the merits of the Debtor's dischargeability Complaint and make a determination on the Complaint that would be binding on CBHE. In support of her argument, the Debtor cites a number of cases holding that the bankruptcy court's jurisdiction over the dischargeability of debt derives "not from jurisdiction over a State or other creditors, but rather from jurisdiction over debtors and their estates," *In re Collins,* 173 F.3d 924, 930 (4th Cir.1999), and therefore a bankruptcy court can render binding determinations of dischargeability against a state (creditor) notwithstanding that State's valid assertion of Eleventh Amendment immunity. *Id.; In re Phelps,* 237 B.R. 527, 533 (Bankr.D.R.I.1999); *In re*

---

**24.** The broad language in *DiCarlo* cited by the Debtor reads:

> The statutes referred to are general enabling acts, conferring broad authority for those agencies to sue and be sued. They provide a continuing waiver of sovereign immunity as to those agencies, but they do not imply an intention on the part of the General Assembly to withhold such waiver in cases wherein it had authorized and provided the funds for a particular contract. In the latter situation the waiver is implied

rather than express because the nature of the transaction authorized necessarily contemplates mutual and reciprocal obligations on the part of the citizen and the State, all of which the General Assembly reasonably intends and expects to be fulfilled. Obviously, the implied waiver is limited to matters relating to the specific contract authorized.

*DiCarlo,* at 56–57.

**25.** *See* 20 U.S.C. § 1082(g) and 1072(h).

*Muir,* 239 B.R. 213, 220 (Bankr.D.Mont. 1999). The Debtor also bases her argument on the assertion that Rule 7001, which requires the institution of an adversary proceeding (filing of a complaint, etc.) for all determinations of dischargeability under § 523(a), should be disregarded to the extent that it impairs the jurisdiction granted to the bankruptcy court pursuant to 28 U.S.C. § 157(b), specifically, § 157(b)(1)(I). The Court finds the Debtor's argument misguided for a number of reasons.

First, the Court finds that the Debtor's reliance on the above-cited cases is misplaced. *Phelps* and *Muir* are largely inapposite to the present case, and *Collins* is based on what we believe to be incorrect reasoning.

In *Phelps,* the bankruptcy court was considering, on remand from the Bankruptcy Appellate Panel for the First Circuit, the issue of whether the New York State Higher Education Services ("HESC") was entitled to Eleventh Amendment immunity. The bankruptcy court had previously determined, in an adversary proceeding in which HESC actively participated, that a student loan owed to HESC by the debtor was dischargeable as an undue hardship pursuant to § 523(a)(8). HESC appealed that decision to the BAP and asserted for the first time its claim of Eleventh Amendment immunity. The BAP vacated the decision of the bankruptcy court on the issue of dischargeability and remanded on the issue of HESC's Eleventh Amendment immunity. On remand, the bankruptcy court in *Phelps* determined that HESC had effectively waived its immunity by, among other things, filing an answer to the complaint acknowledging that HESC was a party to this adversary proceeding and that the bankruptcy court had jurisdiction. Therefore, the court concluded, HESC could not claim Eleventh Amendment immunity and would be bound by the court's determination of dischargeability. This holding is inapposite and irrelevant to the case at hand; CBHE has not actively participated in the case, and if it had, we would have no problem holding that it had waived its immunity by doing so.

Although the *Muir* case also involves a claim of immunity by a state agency[26] in the context of a student loan dischargeability proceeding, it is inapposite because it relies primarily on an application of the Supreme Court's holding in *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), in its decision to deny immunity to the state agency. In *Muir,* Sallie Mae, the original holder of the debtor's loan, transferred the loan, post-petition, to (once again) HESC. HESC claimed Eleventh Amendment immunity, but the court rejected this claim, reasoning that HESC's failure to comply with certain requirements in C.F.R. § 682.402(i) ("Guaranty agency participation in bankruptcy proceedings") constituted a failure to "obey the binding laws of the United States in good faith," and pursuant to the Supreme Court's holding in *Alden,* such a failure precluded HESC from asserting Eleventh Amendment sovereign immunity. *Muir,* 239 B.R. at 221 (citing *Alden,* 527 U.S. at 754–57, 119 S.Ct. at 2267). That holding bears on an issue not raised in this case. However, the Court does note that we do not necessarily agree with *Muir's* application of the holding in *Alden;* we are not persuaded that HESC's conduct in refusing to perform an obligation set forth in a federal regulation constitutes a failure to "honor the binding laws of the United States in good faith." *Alden, supra.* To the Court's knowledge, that issue has not yet been addressed by any court.

 The proposition for which the Debtor cites *Phelps* and *Muir* was only raised in those cases as dicta. That proposition is that a bankruptcy court may determine the dischargeability of debts owed

---

**26.** There was some question in *Muir* whether HESC actually qualified as an "arm of the state," but it did not affect the court's reasoning or ultimate holding.

**542**

to "sovereigns," regardless of their participation in the case, because the jurisdiction of the bankruptcy court "stems, not from jurisdiction over the sovereign, but from the bankruptcy court's jurisdiction over the debtors and the estate." *Phelps,* 237 B.R. at 533. We do not disagree with the proposition that the jurisdiction of the bankruptcy court over a debtor and the bankruptcy estate differs from jurisdiction over a party to litigation and can be far reaching in some ways, *e.g.,* the ability to bind creditors to the stay and the general discharge; however, the reach of that jurisdiction is not without limits, and the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, case law, and not least, the Eleventh Amendment, provide us with guidance as to those limits. We believe that the court in *Collins* exceeded those limits.

In *Collins,* the City of Norfolk, Virginia, obtained a judgment against a bail bondsman (Collins) for over $37,000. Collins and his wife filed a Chapter 7 petition, obtained their discharge(s), and the case was closed. Shortly thereafter, the Commonwealth of Virginia commenced garnishment proceedings to collect on its judgment. Collins moved to reopen the bankruptcy case and, in the same motion, requested a determination that the debt owed to the City was dischargeable. The bankruptcy court found the debt to be dischargeable, and the district court affirmed. On appeal to the Fourth Circuit Court of Appeals, the Commonwealth raised the defense of sovereign immunity. The Court of Appeals determined that, notwithstanding the Commonwealth's valid

assertion of Eleventh Amendment immunity, the bankruptcy court's jurisdiction "over the debtor and his estate" gave it the authority to proceed with its determination of dischargeability and to bind the Commonwealth to any decision it reached. The Court reached this result based on the erroneous decision to allow the determination of ·discharge to proceed as a part of the motion to reopen filed pursuant to 11 U.S.C. § 350, rather than as an adversary proceeding as is required by Federal Rule of Bankruptcy Procedure 7001. It offered no other reason, other than the bankruptcy court's unique jurisdiction over the debtor and the estate, for ignoring the requirements of Rule 7001.

Once the court made the choice to allow a determination of dischargeability to be made in the course of a non-adversarial proceeding (which does not require a complaint or formal service on the defendant to be effected), the *Collins* decision flowed from sound legal principles;[27] the motion to reopen would not constitute a suit against one of the United States, *see State of Maryland v. Antonelli,* 123 F.3d 777, 787 (4th Cir.1997), and as such, would not trigger the Commonwealth's Eleventh Amendment immunity.

■■■ We decline to follow *Collins* for two reasons: First, it is inapposite because the Debtor in this case has already filed an adversary proceeding, and most courts, including this Court (and to some degree, the court in *Collins*), hold that an adversary proceeding instituted to determine the dischargeability of a debt constitutes a suit against a state.[28] *See Mitchell v. Cali-*

---

**27.** The Court of Appeals did make one other misstatement, though. In support of its position, the court claimed that a contrary ruling would undermine the ability of the bankruptcy court to discharge *any* debt owed to a state. That is incorrect. It is well established law that an ordinary debt, *i.e.,* one that is not subject to exception from discharge pursuant to 11 U.S.C. § 523(a) will be discharged (as long as it is listed in the debtor's schedules) whether the state-creditor files a claim (submits to the jurisdiction of the bankruptcy court) or not. *Hoffman v. Connecticut De-*

*partment of Income Maintenance,* 492 U.S. 96, 99, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989). In contrast, the case before the Court of Appeals in *Collins* dealt with a debt subject to determination of dischargeability, which would have to be adjudicated in an adversary proceeding.

**28.** The court in *Collins* impliedly recognized this when it attempted to distinguish the debtors' motion to reopen from an adversary proceeding to determine dischargeability, which

*fornia Franchise Tax Board (In re Mitchell)*, 222 B.R. 877, 884 (9th Cir. BAP 1998); *In re Rose*, 214 B.R. 372, 376 (Bankr. W.D.Mo.1997) *rev'd on other grounds*, 227 B.R. 518 (W.D.Mo.1998); *Morrell v. Franchise Tax Board (In re Morrell)*, 218 B.R. 87, 89–90 (Bankr.C.D.Cal.1997).[29]

Second, the court in *Collins* offered no reason, whatsoever, why Rule 7001 can be disregarded; the court skirted the issue by stating that the inclusion of a request for a determination of dischargeability did not transform the motion to reopen into an adversary proceeding because of the unique jurisdiction of the bankruptcy court; however, the court offered no legal basis for completely disregarding the Federal Rules of Bankruptcy Procedure.

The court in *Collins*, as well as the Debtor, fail to appreciate the difference between "ordinary" debts and debts that are subject to determinations of nondischargeability under § 523(a). And it is this difference that forms the basis of the second, and perhaps more important reason, we reject the Debtor's argument that, notwithstanding CBHE's dismissal from the case on the grounds of Eleventh Amendment immunity, the bankruptcy court can proceed to make a determination on the Debtor's Complaint that would be binding on CBHE.

The difference between ordinary debts and debts that are subject to determinations of dischargeability under § 523(a) is a product of policy choices made by Congress to treat certain debts differently and is reflected in the substantive and procedural provisions of the Bankruptcy Code and Rules of Procedure. In the case of ordinary debts, the policy of giving an honest debtor a fresh start is paramount, and due process is satisfied by simple notice to creditors. *See* 11 U.S.C. §§ 342, 521(1) and 523(a)(3); Fed.R.Bankr.P. 1007, 2002 and 4004. Consequently, the bankruptcy court's jurisdiction over the debt, the debtor, and the bankruptcy estate is deemed sufficient to render binding judgments on ordinary debts, regardless of a creditor's participation in the bankruptcy. If a creditor chooses to participate in the bankruptcy, *i.e.,* share in the equitable distribution of the debtor's estate, the creditor may file a proof of claim and submit personally to the jurisdiction of the bankruptcy court. On the other hand, if a debtor properly lists a debt and that creditor is given notice that its debt will be discharged, the creditor's failure to personally submit to the jurisdiction of the bankruptcy court does not prevent the bankruptcy court from rendering what amounts to (as the Debtor puts it) a *"de facto* default judgment" against the creditor to whom that debt is owed. For ordinary debts, it does not matter who the creditor is; a state's Eleventh Amendment sovereign immunity does not afford it any protection against these *de facto* default judgments. *Hoffman, supra.*

The debts excepted from discharge, listed in § 523(a), however, reflect a decision by Congress that the fresh start policy is not always paramount. For example, some of the exceptions to discharge in § 523(a) are based on a corollary of the policy of giving honest debtors a fresh

it admitted would be a suit against the state. *Collins,* 173 F.3d at 930.

**29.** The only case holding otherwise is *Ranstrom v. I.R.S. (In re Ranstrom)*, 215 B.R. 454 (Bankr.N.D.Cal.1997). The holding in *Ranstrom* appeared to be based more on policy concerns than established precedent. The court opined:

As a policy matter, allowing the bankruptcy courts to determine whether a tax has been discharged is a small price for the states to pay, considering the millions of dollars poured into state treasuries every year from bankruptcy estates at no cost to the states. In light of this benefit to the states, it is not asking too much to require them to abide by bankruptcy court decisions concerning their rights under the Bankruptcy Code....

[T]he Eleventh Amendment should be narrowly interpreted if it severely inhibits the power of Congress to exercise its Article I authority.

*Id.* at 455–56.

start, which would be *to deny dishonest debtors* a fresh start. *See e.g.,* 11 U.S.C. §§ 523(a)(1), (2), (4), (6), and (12). Other exceptions to discharge reflect policy choices by Congress to make certain debts harder or impossible to discharge because of the nature of the debt, such as debts owed to spouses for alimony or that otherwise arise in connection with a divorce, 11 U.S.C. §§ 523(a)(5) and (15), or as is pertinent to this case, student loans made, insured or guaranteed by a governmental unit, 11 U.S.C. § 523(a)(8).

Federal Rule of Bankruptcy Procedure 7001 lists the proceedings that are to be conducted as adversary proceedings. Section 523(a) determinations of dischargeability are included in that list. FED. R.BANKR.P. 7001(6). While the Federal Rules of Bankruptcy Procedure do not explicitly provide any reasons why an adversary proceeding is necessary to determine the dischargeability of a debt under § 523(a),[30] the need for the procedural safeguards provided in adversary/civil proceedings (such as the service of a complaint, a summons, discovery, etc.[31]), flows from Congress's decision to elevate the nature of a debt over the goal of the debtor's fresh start. In other words, the shift in focus toward the nature of a debt is equivalent to a shift in focus toward the creditor and the circumstances surrounding the creation of the debt. Consequently, the bankruptcy court is called on to exercise greater jurisdiction over a non-debtor.

Generally, the exercise of jurisdiction over a non-debtor does not present a problem; the bankruptcy court has subject matter jurisdiction over determinations of dischargeability pursuant to 28 U.S.C. §§ 1334, 157(a) and 157(b)(2)(I), and it may exercise personal jurisdiction over any defendant who is properly served. *See In re Federal Fountain, Inc.,* 165 F.3d 600, 601–02 (8th Cir.1999) (holding that minimum contact with *any* state is sufficient because bankruptcy courts have nationwide jurisdiction). The only potential barrier to the bankruptcy court's jurisdiction would be the assertion of Eleventh Amendment immunity by a state-creditor, and Congress anticipated that by enacting the current form of 11 U.S.C. § 106(a) in 1994.[32] What was not anticipated by Congress, though, was the subsequent judicial invalidation of § 106(a).

With the declaration that § 106(a) is unconstitutional, debtors have been left scrambling for a way to bring dischargeability complaints against state-creditors. The fact that jurisdiction over determinations of dischargeability is concurrent,[33] as the Debtor points out, provides little solace; the debtor is left with the debt hanging over his or her head until the State brings an action to collect that debt, and then, the determination of dischargeability will be made by a state judge who may be less familiar with the issues than a bankruptcy court. The "solution" the Debtor in this case now proposes is that we should find an implicit grant of jurisdiction in 28 U.S.C. § 157(b)(2)(I) that gives the bankruptcy court not only the jurisdiction to hear determinations of dischargeability, but the power to bind unconsenting states to those determinations. In other words, the Debtor urges us to find that Congress accomplished indirectly what it could not accomplish expressly and directly, *i.e.,* an

---

**30.** Case law is similarly unhelpful. Most courts merely state the need for an adversary proceeding to determine the dischargeability of a debt for what it is: a rule that is to be followed by the courts. *See In re Miller,* 228 B.R. 203, 206 (Bankr.N.D.Ill.1999);

**31.** An adversary proceeding is, in effect, a small civil proceeding that is related to and occurs within the course of a bankruptcy case. As such, most of the Federal Rules of

Civil Procedure apply; Federal Rule of Bankruptcy Procedure 7002 incorporates Federal Rule of Civil Procedure 2, and so on.

**32.** *See* Section I of the Opinion.

**33.** *See In re Stout,* 231 B.R. 313, 317 (1999); *In re Schmitt,* 220 B.R. at 73; *Jones v. I.T.T. Technical Inst. (In re Jones),* 38 B.R. 968, 971 (Bankr.S.D.Ohio 1984).

abrogation of the State's Eleventh Amendment immunity. In support of her position, the Debtor cites the jurisdiction of the bankruptcy court to render judgments on debts, binding on state-creditors notwithstanding their immunity, for *ordinary* debts discharged without determinations of dischargeability.

We decline to adopt the Debtor's solution. What cannot be accomplished through § 106(a) due to its unconstitutionality cannot be accomplished by judicial fiat. The Debtor asks us to blur the line between the discharge of ordinary debts and those debts which require determinations of dischargeability, a distinction that Congress made clear in the Bankruptcy Code. That distinction, as discussed above, has implications on the jurisdiction of the bankruptcy court, manifest in Rule 7001(6), that we cannot and will not ignore. As a practical matter, we cannot ignore it because it is not this Court's prerogative to disregard the Federal Rules of Bankruptcy Procedure when (and if) it sees fit. As a matter of policy, the Court does not believe that Rule 7001 conflicts or places an unintended restriction on the jurisdiction of the bankruptcy court; rather, we believe that Rule 7001, *et seq.* provides the necessary procedural mechanisms by which the bankruptcy court may exercise its jurisdiction over issues that Congress recognized implicate the rights and property of non-debtors beyond the scope of ordinary debts.

Therefore, for the reasons stated above, we find that the Bankruptcy Court does not have jurisdiction to determine the dischargeability of debt owed to a party who has been dismissed from the adversary proceeding on the grounds of Eleventh Amendment immunity.

## CONCLUSION

In this Opinion, we set out to answer three questions posed by the Debtor:

1. Did Congress successfully abrogate the Eleventh Amendment Immunity when it enacted 11 U.S.C. § 106?

2. If Congress did not successfully abrogate the Eleventh Amendment immunity by the enactment of 11 U.S.C. § 106, has CBHE waived its immunity in this action?

3. If Congress did not successfully abrogate the Eleventh Amendment immunity by the enactment of 11 U.S.C. § 106 and CBHE did not waive its immunity in this action, does the Court retain jurisdiction over the Debtor and the Debtor's estate sufficient to make a determination on the merits of the hardship claim?

Based on the reasons set forth in this Opinion, the answer to all of these must be "No." Although this conclusion runs contrary to the explicit intent of Congress as manifest in § 106(a) and § 523(a)(8), is inimical to principles of judicial efficiency that favor the resolution of all discharge issues by a bankruptcy court, and undermines the cornerstone of bankruptcy law (namely, to give debtors a prompt and efficient "fresh start"), the hoary doctrine of Eleventh Amendment sovereign immunity as fortified by recent decisions of the Supreme Court prevents us from holding otherwise.

Therefore, it is

**ORDERED** that CBHE's Motion for Summary Judgment on the Issue of Sovereign Immunity be and is hereby GRANTED. Accordingly, CBHE's Motion to Dismiss is also GRANTED to the extent that it is dismissed from this Adversary Proceeding. The Adversary Proceeding remains pending with DOE as the sole defendant. It is

**FURTHER ORDERED** that the Debtor's Motion for Summary Judgment on the Issue of Sovereign Immunity be and is hereby DENIED.

**SO ORDERED.**

### ATTACHMENT A—Mo.Rev.Stat. § 173.115

1. After the department has paid a loss on a defaulted loan and has entered a

statement of claim in which it determines and sets forth the existence, nature and amount of the money due it by the defaulting borrower and a proposed payment schedule, the department may issue an order directing any employer of the borrower to withhold or pay over to the department money due or to become due to the department.

2. Before issuing the order as provided in subsection 1 of this section, the department shall serve on the borrower the statement of claim and shall inform the borrower that the department intends to initiate proceedings to collect the debt through deductions from earnings. The department shall also provide a copy of this section or an explanation of the borrower's rights under this section.

3. The department shall provide the borrower with an opportunity to inspect and copy records related to the defaulted loans.

4. The department shall provide the borrower with the opportunity to enter into a written agreement with the department under terms agreeable to the department to establish a schedule for the repayment of the debt.

5. The department shall provide the borrower with the opportunity to have a hearing before an impartial hearing officer appointed by the department but who is not under the control or supervision of the board or department. The procedures for the hearing shall be the same as those for contested cases under chapter 536, RSMo. Upon the borrower's filing of a request for a hearing in compliance with the rules of the board, the department shall stay the commencement of collection proceedings for the debt described in the statement of claim until the department issues an order provided for in subsection 6, 7, or 8, of this section.

6. At the earliest practicable date but not later than sixty days after the filing of the request for the hearing, the hearing officer shall file with the department his written decision which states specifically his findings in regard to those matters set forth in the department's statement of claim. The hearing officer shall also determine and include in his decision the terms of the repayment schedule which shall be the same as that set forth by the department in its statement of claim unless he finds no good cause to enter that schedule. Upon receipt of the hearing officer's decision, the department shall issue an order to pay debt which adopts the findings in the decision as to the existence, nature and amount of the debt and as to the repayment schedule.

7. When a borrower properly requests a hearing under the board's rules and when the hearing officer does not issue a decision within sixty days of the department's having received the request for the hearing, the department shall issue an order withdrawing the statement of claim and serve it upon the borrower with a copy of this subsection. After such an order is entered, the department shall not use the provisions of this section in regard to the loans set forth in the statement of claim, but may use any other remedy provided by law to recover the moneys owed the department. The order issued by the department shall not have the effect of precluding any other administrative or judicial tribunal from deciding any claim brought by the department or other party against the borrower or from deciding any factual or legal issue relevant to such claim.

8. When a borrower does not make a proper timely request for a hearing, the department may issue and serve on the borrower an order to pay debt which contains as its provisions the content of the statement of claim including the proposed repayment schedule.

9. The borrower may seek judicial review of any order to pay debt under sections 536.100 to 536.140, RSMo.

10. Upon issuing an order to pay debt, but not less than thirty days after the statement of claim was served on the borrower, the department may issue an order to withhold earnings which directs any employer of the borrower to withhold and pay over to the department money due or to become due the borrower. The employer shall withhold from the earnings the amount specified in the order, except that the total amount withheld shall not exceed ten percent of the borrower's earnings after deduction from those earnings of any amount required by law to be withheld. When the borrower voluntarily makes a written request that money due or to become due him be withheld or applied to the debt or that more than the ten percent maximum be withheld from his earnings, the employer shall comply with that request as if so ordered by the department.

11. Subject to the provisions of section 454.505, RSMo, an order to withhold earnings shall have the same force and effect in regard to the employer as any other garnishment.

12. No employer or other payor who complies with an order to withhold earnings shall be liable to the borrower, or to any other person claiming rights derived from the borrower, for wrongful withholding. An employer who fails or refuses to withhold or pay the amounts as ordered under this section shall be liable to the department in an amount equal to the amount which became due the department during the relevant period and which, under the order, should have been withheld and paid over.

13. An employer shall not discharge, refuse to hire or otherwise discipline an employee as a result of an order to withhold and pay over certain money authorized by this section. Any employer who does so is guilty of an infraction.

14. Service on the borrower or on the employer pursuant to this section or pursuant to rules promulgated under this section may be made on the borrower or employer, respectively or on other party in the manner provided for service of process in a civil action by a duly authorized process server appointed by the department, or by certified mail, return receipt requested, to the borrower's last known address or to the employer's address. The department may appoint any disinterested party, including, but not necessarily limited to, employees of the department, to serve such process. For purposes of this section, a borrower or an employer who does not accept receipt of service by certified mail or a borrower who has not provided the department his new or correct address is deemed to have been served as of the date on which the certified mail is mailed.

15. The board may promulgate rules to carry out the provisions of this section, including, but not limited to, rules pertaining to proceedings before the hearing officer and before the department and rules pertaining to procedures to be followed by employers to comply with the order to withhold and pay over earnings.